## Cecil, et al. v. Cecil, et al.

(Decided December 4, 1914.)

## Appeal from Hardin Circuit Court.

1. **Wills—Interpretation—Intention of Parties.**—In the interpretation of wills all technical rules of construction must give way before the intention of the testator, when that intention can be fairly ascertained from the instrument as a whole and taking into the estimate the relation of the testator to the parties involved.

2. **Wills—Construction.**—When a life estate has been expressly created in a will no language thereafter used in the instrument, short of plain and explicit terms, will be deemed to have enlarged that estate; therefore, where a testator gives to his wife property "to have and to hold during her life time," and thereafter in the same sentence and in the same connection adds the provision "and to her heirs and assigns forever" the word "heirs" will be construed to mean children, and the word "their" supplied before the word "assigns" so as to give effect to the plain meaning of the testator.

3. **Wills—Construction.**—Where there are apparently inconsistent provisions in a will the court will so construe it, if possible, as to give effect to each provision in it; and it is permissible, in order to harmonize the apparently inconsistent provisions and effectuate the manifest purpose of the testator, to give to words used in the instrument their popular rather than their technical meaning, and, if necessary, to supply words.

4. **Wills—Construction.**—Where a life estate only is given in personal property, and it is apparent that it was the intention of the testator that the life tenant should have the possession and use of the personal property during her life, and expressly requests that no bond be required of the executrix, who is also the life tenant, and there is no disposition to waste or destroy the estate shown by the life tenant, it was improper to require bond securing the remaindermen in the value of the personal property at the expiration of the life estate.

5. **Wills—Life Tenant—Waste.**—The life tenant having been guilty of waste by selling timber from the land, but being, under the terms of the will, entitled during her life to the possession and use of the whole of the real and personal property, it was error to enter a judgment against her in favor of the remaindermen for the value of the timber sold; the life tenant being entitled to the use of the fund during her life, the court should have required her to give a bond to secure the remaindermen in the value thereof at the expiration of the life estate.

GEORGE K. HOLBERT and O'DOHERTY & YONTS for appellants.

H. L. JAMES for appellee, A. B. Cecil.

L. A. FAUREST for appellees, Kate Kinkead and husband.

Opinion of the Court by Judge Turner—Affirming in part and reversing in part.

A. D. Cecil, Sr., died on the 10th of September, 1906, a resident of Hardin county, having first made and published his last will and testament, dated just one week before his death.

Thereafter his will was duly probated, and, as requested in the instrument, his widow qualified as executrix without the execution of bond.

The will is as follows:

"I, A. D. Cecil, of the town of Cecilian, county of Hardin, and State of Kentucky, being of sound mind and disposing memory, do make, publish and declare this to be my last will and testament, to-wit:

"First. All of my just debts and funeral expenses shall first be fully paid.

"Second. I direct my executrix to deed Lot No. 1 to Mrs. Kate Kinkead, Lot No. 3 to Mrs. John Bullock, Lot No. 4 to B. H. Cecil, Lot No. 5 to H. A. Cecil, Lot No. 6 to Emma Louise Cecil, Lot No. 7 to A. D. Cecil, Jr., the two last mentioned lots being and lying on same side of street as my home residence and just east of same. The other lots lying just across the street opposite the said home residence. All of said lots have been measured off and each of my beloved children know which lot is his or hers. My children not mentioned herein have deeds to their lots.

"Third. I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my beloved wife, Emma E. Cecil, to have and to hold during her lifetime and to her heirs and assigns forever.

"Fourth. I nominate and hereby appoint my beloved wife, Emma E. Cecil, my executrix and request the County Court to permit her to qualify without giving any security.

"Fifth. I hereby request my beloved wife, Emma E. Cecil, to carry out a verbal contract which I some time ago made with Bob Clark in a sale of 20 acres of land on which said Clark now lives, the contract being as follows: Bob Clark is to pay $500 for said land—$100 cash Jan. 1, 1907, and is to execute four notes of $100 on that date to run 1, 2, 3, 4 years and to draw interest at 6% from January 1, 1907, until paid, each note to retain a lien on said 20 acres of land."

The testator, in addition to the lots specifically de-

vised in the second clause of his will, left some four or five hundred acres of land and a small personal estate.

The executrix immediately took charge of all the estate, both real and personal, and continued to hold and manage the same without filing an inventory of the personal property or making any settlement of her accounts as executrix until April, 1912, when this equitable action was filed by A. D. Cecil, Jr., and Kate Kinkead, two out of the seven surviving children of the decedent, asking for a construction of the will, charging waste by the sale of timber from the lands, asking for a settlement of the accounts of the executrix. and that she be enjoined from further waste.

A joint answer was filed by the executrix and the remaining five children of the decedent, claiming that, under the will, the widow took the fee, and denying waste.

In a judgment at the November term, 1912, the court construed the will to give to the widow only a life estate in the real and personal property, and the remainder in fee to her children; and thereafter, at the August term, 1913, entered a judgment charging the executrix with $2,080.62 as the value of the personal property which came to her hands as such, and that she was entitled to a credit thereon of $785 for claims against the estate paid, leaving a net balance in her hands of $1,295.62, and required her to execute a bond with good security to the remaindermen conditioned that the same would be forthcoming at the termination of her life estate therein; and also rendered a judgment against her for $1,187.13, the net value of timber sold from the land; and, in addition, enjoined Emma E. Cecil from cutting any other timber from the lands except such as was necessary for firewood and for the keeping up of improvements on the farm; and from these judgments the widow and five children have appealed.

The character of estate taken by the widow under the terms of this will is the chief question to be determined, it being the contention of appellants that she takes a fee-simple title, and of appellees that she takes only a life estate with a remainder to her children. Her children are also the children of the decedent, and at the time the will was drawn, and at the time of his death, she was more than 60 years of age.

The argument for the appellant is that the devise to her "and to her heirs and assigns forever" is a well-known and well-recognized legal term which is used only

in conveying a fee-simple estate, and that its use is inconsistent with a purpose to convey a less estate, while it is the view of appellee that an estate for life had been expressly created by the terms of the third clause before the use of the words "and to her heirs and assigns forever," and that the use of the latter term was not intended to enlarge the estate already created, but should be construed so as to read—treating the word "heirs" as meaning children—"and to her children and (their) assigns forever."

In the interpretation of wills all technical rules of construction must give way before the intention of the testator when that intention can be fairly ascertained from the instrument as a whole, and from the relation of the testator to the parties involved, and particularly when the will has been drawn by one having no knowledge of the technical meaning of the legal phrases attempted to be used therein.

Keeping in view the fact that the widow was, at the time, 60 years of age, it may be gathered from the instrument that her welfare during the remainder of her life was uppermost in the mind of the testator; but it is also apparent, from the testator's reference to "my beloved children," that he had each of them in mind, and while his chief concern may have been for the welfare of the widow during the remainder of her life, yet that he no less intended to provide for their children at her death.

When a life estate has been once expressly created in a will, no language thereafter used in the instrument, short of plain and explicit terms, will be deemed to have enlarged that estate.

If the words "and to her heirs and assigns forever" are to be given their strict technical meaning, and held to have passed the estate in fee, then we are confronted with the anomalous situation of a testator, after expressly creating in a devisee a limited estate in property, immediately thereafter, in the same clause and in the same sentence of his will, destroying the limited estate just created and substituting therefor an estate in fee. It is not conceivable that such could have been his purpose. It is the duty of the courts, when there are apparently inconsistent provisions of a will, if possible, to so construe them as to give effect to the whole instrument and each provision in it. Clearly the life estate was expressly created, and if the succeeding words, "and to her heirs and assigns forever," are to be given their

technical meaning, and held to have created an estate in fee, then manifestly there is irreconciliable conflict between the two provisions which cannot be harmonized.

But if we treat the word "heirs" in the concluding sentence as having been used in its popular sense, and as, therefore, meaning "children," and supply the word "their" before the word "assigns," we would have a perfectly reasonable and proper provision reading as follows: "To have and to hold during her lifetime and to her children and (their) assigns forever." Certainly such an interpretation is in harmony with the plain meaning of the testator, and consistent with his expressions of affection for "my beloved wife" and "my beloved children."

In the interpretation of wills this court has frequently construed the word "heirs" to mean children, and the word "children" to mean "heirs," in each case the purpose being to effectuate the intention of the testator as gathered from the whole instrument.

Hays v. Hays, 154 Ky., 729; Naville v. American Mch. Co., 145 Ky., 344.

It is likewise the rule in this State that in order to effectuate the intention of the testator it is permissible to change the language of the will, to discard words, to supply or transpose words or even sentences, phrases and paragraphs. Buschmeyer v. Klein, 139 Ky., 124. In the light of these rules, considering the whole instrument and looking only to the intention of the testator, we are of opinion that the lower court properly construed the will to give to the widow only a life estate in the residuary estate and the remainder in fee therein to her children.

It is earnestly insisted for the appellants that the lower court erred in requiring the widow to execute a bond securing the remaindermen in the value of the personal property on hand at the testator's death. The rule in this State is that, where, from the entire will, it is manifest that it was the intention of the testator that the life tenant should have possession and use of the personal property, and no disposition to waste or destroy the estate is shown by the life tenant, the bond should not be required. (Hill v. Harding, 92 Ky., 76.)

In this case it is shown that the personal property on the farm is greater in value, and that there is more of it, than there was at the time of the death of the testator. The specific request in the will that no bond

should be required of the executrix is conclusive as to the testator's purpose, and, in the absence of evidence showing a purpose or disposition to waste or destroy the estate, the bond was improperly required.

Many questions are discussed in the briefs with reference to the title of the holder of the life estate in the property which is necessarily consumed in its use, and similar questions; but in our view of the case those questions need not now be determined. The holder of the life estate is still living, and at her death such questions may be properly passed upon between her estate and the remaindermen.

We have seen from the interpretation of the will, and from what appears to be the plain meaning of the testator, that the widow was entitled, during her life, to the possession and use of the whole of the real and personal property, and while she had no right to sell the timber from the place without the consent of the remaindermen, having done so, it being a part of the property embraced in the will, she was entitled to the use of the fund arising from the sale of the timber during her life. It was, therefore, error for the court to enter a judgment against her in favor of the remaindermen for this fund. But, inasmuch as she had exceeded her authority in selling the timber, and had, therefore, in that respect been guilty of waste, the lower court should have required her to give a bond to secure the remaindermen the value thereof at the expiration of her life estate.

For the reasons given the judgment is reversed in part, with directions to enter a judgment as herein indicated.