## Price v. Price.

Nov. 17, 1944.

H. Clay Kauffman, and Smith & Leary for appellant.

E. C. Newlin for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part, reversing in part.

Edgar Price, a citizen and resident of Garrard County, died testate in July, 1937. After his death his will, which was executed on January 8, 1930, was duly probated. In its entirety (excluding signatures) it says: "Jan. 8th 1930.. I will to my wife Mary all my property after my debts are paid to do as she pleases with. After her death it is for Joe and I want Mary and Napo and Joe to wind up the estate without bond."

Testator was survived by his wife, Mary Price, the appellant, to whom we shall hereafter refer as plaintiff. He was likewise survived by an only child, Joe Price, who was an adult at the time of his father's death and resided with his parents. The principal item of property owned by the testator at his death was a one-half undivided interest in a farm in Garrard County containing 298 acres, the other undivided half being owned by testator's brother, Napoleon Price, who was referred to in the record, as well as the will, as "Napo", and which will be done in this opinion. It is stated, in the petition, as well as conceded, that testator left but a limited amount of personal property, and so far as the record shows he owed no debts, except perhaps medical bills incurred during his last sickness and funeral expenses. It also appears that Napo Price was the dominant figure in managing and operating the jointly owned farm prior to testator's death.

In June, 1942, Joe Price died testate having executed his will in which he gave all of his property to his wife, the appellee, and defendant below, Ruth C. Price. Following the probation of his will this declaratory judgment action was filed in the Garrard circuit court by plaintiff against defendant, and in her petition plaintiff set out the above facts and alleged that the will of

her husband, Edgar Price, should be construed as devising to her the fee-simple title to his undivided one-half interest in and to the 298 acre farm; but she alternatively pleaded that if she did not become vested by her husband's will with the fee-simple title to his estate, then his will should be construed as vesting her with the power to sell it and to consume the proceeds, at least to the extent of supplying her comfortable necessities, and she prayed as set forth in her petition. Copies of the two wills, as well as deeds to the land were filed with the petition to which defendant demurred, and the case was then submitted to the court for decision. It adjudged that plaintiff under her husband's will (Edgar Price) "took a life estate in the estate of said Edgar Price together with the right, subject to the prior approval of the court, to dispose of said estate if necessary for her comfortable support and to use the proceeds to the extent reasonably necessary for that purpose; the plaintiff having declined to plead further, it is ordered that her petition be, and it hereby is, dismissed." From that judgment plaintiff prosecutes this appeal, and defendant has moved for and obtained in this court a cross-appeal.

It is therefore seen that three contentions are raised by the parties to the litigation which are, (1) whether the will of plaintiff's husband bequeathed to her any greater interest in his estate than one for her life; (2) if she were given only a life estate does the will invest her with the power of sale of the property and necessary consumption for her comfortable support, and (3) whether she may make such sale, if authorized, for such purpose, on her own volition, or should she obtain an order of court therefor? Manifestly if question (1) should be answered in the negative then it becomes unnecessary to consider or determine the other two, and, since we have concluded that a negative answer should be made in this case, the opinion will be devoted to the consideration of question (1) supra.

In the case of Dorsey v. Bryan, 170 Ky. 275, 185 S. W. 845, this correct and pertinent statement is made concerning the interpretation of wills: "In the law of wills there are many well-known rules of construction, but on account of the fact that wills, with rare exceptions, are worded differently, it is often difficult to apply in a satisfactory way any of these settled rules to the

particular will, and this accounts for the many nice distinctions courts make in will cases in an effort to get at the intention of the testator, and also decide under what rule of construction the particular will should fall. And the will here in controversy furnishes another illustration of the truth that many case precedents can be found which apparently authorize two constructions. If the testator had stopped with the clause, 'I give, bequeath and devise to my beloved wife all of my estate both real and personal of every description to have and to hold and to enjoy as she may wish,' there could, of course, be no difficulty in at once deciding that he intended to and did invest his wife with the fee-simple title to the estate devised. But when we come to read the entire will it is doubtful if the testator intended to, or if the will should be so construed as to give to his wife the fee-simple title to the estate as these words are usually understood and applied in the law.''

Every attorney, no doubt, coincides with that observation as to the difficulty of courts in construing wills which is created because of the difference in phraseology employed in the drafting of wills. For the guidance of courts in performing such tasks a number of rules have become crystallized in the law, among which are: (a) that the intention of the testator, as manifested by the language he employs throughout his entire will, should prevail with only one limitation or exception, which is, that the gift made by the will may not invade the provisions of an express statute, nor be, contrary to public policy; (b) that in case of a possible repugnancy in testator's entire language by which he expressed his intention and purpose, then the will should be given a construction that would carry out the apparent repugnant parts if it may be done without emasculating the evident intention of testator, and (c) that no independent part of a will should be eliminated or expunged therefrom by the court, unless absolutely required by rules (a) or (b).

Pages of authority could be cited in support of the three rules, but they are so familiar and so well grounded in the law that none of them need be cited in this opinion. Attorneys for each side, as well as the court in a very able opinion he rendered and made part of the record, cite a number of cases in which particular language in the various wills under consideration was con-

strued. But in all of them the court recognized the above rules in giving effect to controlling expressions found in the wills under consideration.

In the case of Ewering v. Ewering, Ex'r, 199 Ky. 450, 251 S. W. 645, 646, in determining whether or not the first taker of specified property was given the absolute fee title, or only a life estate therein, we said (after stating the ancient rule that a fee once given could not be limited to a lesser title in a later clause): "Following the ancient rule the courts of some of the states, including some early opinions from this one, held that, when an absolute fee was first given, and which includes the unlimited power of disposition, it could not be limited or cut down by a following or subsequent clause; but more recently this court has held that, since a will is not complete until all of it is written and duly executed by the testator, and since the first clause giving an absolute estate is not effectual for any purpose until the will is executed, and, if the testator, before doing so, inserts a sentence or clause qualifying the absolute one, thereby manifesting his purpose and intention not to devise an absolute estate by the first sentence or clause he used, his intention so manifested would be given effect; but, if the subsequent clause was so worded as not to destroy the power of the devisee to exercise the chief right of an absolute owner to dispose of and consume the property, it would be construed as not qualifying or limiting the absolute estate first given, and therefore ineffectual for any purpose. If, however, the subsequent clause was such as to destroy the power of disposition in the first and apparent absolute taker, and itself made disposition of the entire property after his death, then he would take only a life estate, the same as if it was expressly so stated in the will, upon the ground that such a construction clearly conformed to the plainly manifested intention of the testator. When, therefore, a will devises or bequeaths property to one absolutely, and in a subsequent clause *all* of the same property is disposed of to others after the death of the first taker, the latter will be deemed as having only a life estate in it; but, if the limiting clause purports only to dispose of that portion of the property which the first taker does not consume or dispose of, and therefore operates only on some remaining portion of it, it will be given no effect, and the first taker will be deemed as taking an

absolute estate, since in that event his absolute estate, with the accompanying right to dispose of the property is not curtailed or diminished in any respect.''

The rule announced in that opinion has been followed continuously since then and in some cases preceding it. Among the latest ones is the case of Froage v. Fisher, 291 Ky. 655, 165 S. W. 2d 358, 359. The maker of the will in that case was Anne Boswell Froage. By the second clause of her will she gave to her husband certain real estate in Paducah, Kentucky, ''all fee simple.'' By the fifth clause of her will she said: ''It is my wish that Dr. Froage will help Gardner Smith with his education and at the death of Dr. Froage, Gardner shall have Ten Thousand ($10,000) and the rest of the estate that has come from me' shall be divided between Ellen Boswell Sherman and Billie Fisher, oldest son of Elizabeth Boswell Fisher.'' In construing that will we held that the word ''wish'' in its fifth clause was an enforcible precatory word, the same as if the testator had employed the word ''will'' or ''desire.'' But in either event we held that the first clause standing alone, created an absolute title in the husband, even without the word ''all fee simple.'' But following the rule as expressed in the Ewering opinion we construed that the Froage will in its entirety—a part of which was its fifth clause—limited the fee-simple title given in its clause (1) to a life estate. That conclusion is fortified by the citation of many prior opinions from this court, including our Ewering opinion, and it was held that the addition of the words, ''all fee simple,'' added nothing to the character of title given to her husband, because under section 2342 of Baldwin's 1936 Edition of Carroll's Statutes (381.060, KRS) the title would be as absolute without the expression ''all fee simple,'' as with it. If the first taker is given a fee-simple title— either under the statute, or by express language—then he or she may ''do as she pleases with'' as is expressed in the instant will, which necessarily carried with it the right of sale and the consumption of the entire property by the first taker, and the giving of that power by express language would be no more absolute than if such other expressions had not been added. Nevertheless, under the rule so approved in the Ewering and other opinions—which have constantly followed it—we have held that the absolute fee given to the first taker may be qualified and limited to a life estate when the testator

employs language in other parts of his will clearly expressing such intention, and that interpretation is but following the language of the statute supra when it says that a fee-simple title is given "unless a different purpose appear by express words or necessary inference." We have in the instant case express words showing a different intention on the part of Edgar Price, and which is contained in the second clause of his will, expressed in this language: "After her death it is for Joe." There is more than a "necessary inference" to be drawn from his language, since he expressed his intention in the plainest terms possible, which was that after his wife's death *all* the property that he had given his wife in fee should go to his son, Joe, his only child. To put any other interpretation upon his language we would have to eliminate entirely from the will his expressed purpose and intention that his property after his death should go to Joe.

Some of the cases cited by the court, as well as by attorneys, seem to have confused, or misapplied, the rules as announced in the Ewering case, and many others approving it, in this respect; the will under consideration in such cases gave the first taker a fee-simple title, in many of which power of sale and consumption in the first taker was expressly given. But the will elsewhere stated, either in express or necessarily inferred terms, that the second taker should receive only what was left of the estate of the first taker after she had exercised her right to sell and use the corpus of the property for her support and maintenance. In that case the Ewering opinion and its approving ones, said that the first taker would in such event take a fee-simple title, and that the attempted devise to another of any remnant would be invalid and nonenforcible. Therefore, in some of our later cases where the will attempted to devise to the second taker what the first taker might not dispose of during his life the opinion said that a fee could not be limited on a fee, but which rule, as pointed out in the Ewering opinion, has been discarded by the courts generally following the enactment of the English Wills Act and the Statute of Uses. Therefore, in the use of such expressions in such opinions the writer neglected to observe that the will then being construed provided only for a disposition of the remnant of the estate that the first taker might not consume.

The difficulty in construing the great variety of language employed in wills—many of which are written by laymen—as pointed out in the Dorsey case, supra, was also dealt with by us in the case of Blessing v. Johnston, 249 Ky. 777, 61 S. W. 2d 635, 636, and in doing so we wrote: "The learned trial judge wrote an opinion, and in it he points out what he terms two conflicting lines of opinions of this court in the interpretation of language and clauses in wills that he concludes are similar in every respect to the one involved in this case; and it must be admitted that some of the cases referred to in that opinion furnish some foundation for the court's conclusion. However, an examination of the cases as arranged by the court on either side of the proposition will reveal that this court was endeavoring in each instance to follow the fundamental and basic rule for the interpretation of wills, to the effect that the intention of the testator, if not inhibited by law, shall always prevail. That rule, as so broadly stated, is without exception in this jurisdiction, and the same is true in other jurisdictions of this country so far as we have been able to discover. It is so universally true that we deem it entirely unnecessary to attach supporting cases and texts."

Later along in that opinion we said: "However, we would not be understood as contending that the members of this court, or any other appellate court, are infallible and never render divergent opinions. The members, being human, are liable to err and to render contradictory opinions upon exactly the same state of facts in every particular, and for which reason it may be true that some of the opinions cited in briefs, and in the trial court's opinion, can be so classified, and which, if true, renders it necessary for one of them to be followed and the other repudiated in later cases, depending upon which one is deemed to be more in accord with the correct conclusion in the light of the considerations above enumerated."

Those excerpts are pertinent here if there be any opinions rendered by us in conflict with the Ewering opinion and other ones approving it.

Finally let us make a brief analysis and parsing of the language of Edgar Price's will. He gave to his wife in its first sentence a fee-simple title as hereinbefore pointed out, but in the same paragraph he said that the

same property that he had given his wife in the first sentence of his will should, after her death, go to his son, Joe. It was not any remnant of the estate that he had given to his wife that he directed should be given to Joe after her death, but all of his property since the neuter pronoun "it" referred to the phrase "all my property," which are the words he employed in the first sentence of his will. As heretofore pointed out, to hold that testator gave the fee-simple and unqualified absolute title to his wife would result in the throwing through the window his equally emphatic and express desire that the same property that he had given to his wife should go to Joe after her death. Not only do we think we are entirely unauthorized in so expunging from the testator's will such emphatic language employed by him, but such an action on the part of the court would wholly ignore the interpretative rules, hereinbefore listed, for the interpretation of wills. Another rule is that all parts of a will should be given effect, if it is possible to do so, in reconciling apparent repugnancy in a manner not to do violence to any of its expressed provisions.

But it is said that the testator meant something by the phrase with reference to the estate that he had given his wife, "to do as she pleases with." We agree with that suggestion. But what was it that she could "do as she pleases with?" Manifestly it was the estate that he was giving her—which before he finished his will he clearly pointed out was a life estate—and that she could do with that life estate as she "pleases with." That interpretation is fortified by the circumstances developed by the record, to which courts may look in arriving at the intention of a testator.

Those circumstances in this case were, that almost the entire property that the testator devised was an undivided one-half interest in real estate which had been operated chiefly by his brother, the owner of the other undivided one-half. He, no doubt, wished that the wife should have the exclusive management and control of his half of the jointly owned property, and which she could have had laid off to her by a proceeding for that purpose—notwithstanding she was but a life tenant —if an agreed division could not be had, and which was expressly held by this court in the case of Eversole v. Combs, 130 Ky. 82, 112 S. W. 1132, and by the text in

20 R. C. L. 727, section 11. Furthermore he might have been under the impression that a life estate followed by a remainder could not be sold, or if sold that the proceeds would be impressed with the given remainder interest to his son, and to forestall any such impressions he expressly stated that she should do with the estate given her as she pleases. At any rate that language should not be construed to confer upon his wife the power to sell and consume his estate to the detriment of that given his son in remainder, since to do so would make the remainderman obtain only the remnant of his property, if any, left by the wife at the time of her death, and which would destroy altogether his emphatic devise of *all* of his property to his son after his wife's death. We therefore conclude that the court erred in construing the will as giving to plaintiff any more than a life estate in her husband's property and which conclusion, as hereinbefore stated, dispenses with the necessity of considering or determining contentions (b) and (c), supra.

Wherefore, for the reasons stated, the judgment is affirmed on the appeal dismissing the petition and reversed on the cross-appeal with directions to enter one in conformity with this opinion.

The Whole Court sitting, with Judge Cammack and Judge Harris dissenting from that part of the opinion which denies the right of the wife to encroach in any manner on the corpus of the property.