## Graves et al. v. Adams et al.

December 10, 1948.
Rehearing denied May 3, 1949.

Frank S. Ginocchio, Leslie W. Morris, and Kermin Fleming for appellants.

Harbison, Kessinger, Lisle & Bush for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The case presents the construction of that part of the will of the late J. H. Graves which devised real estate in trust for his minor children. The question is whether the trust terminates as each child becomes twenty-one years of age or continues for their respective lives. The duration of the trust as to personal property is unquestioned.

Following the declaration of the instrument as a will, it reads:

"First: I direct that my just debts and funeral expenses be paid.

"Second: All of the rest and residue of my property, whether in possession, reversion or remainder, I hereby devise and bequeath in equal parts to any children, that I may have, who may be living at the time of my death. At this time I have three children living, namely: J. H. Graves, Jr., James B. Graves, and Jane R. Graves. The portion of each child is hereby devised to such child to have and to hold, for and during his or her natural life, with remainder at his or her death to the issue of such child, and if any one of my children dies without issue either before or after my death, then such portion of the one so dying shall be added to the

portion or portions of my other children living at the time of my death, and to be held in the same manner, as the portions of my said respective children are directed to be held, namely: for and during the life of such child or children, with remainder to his or her issue. In setting aside the portion of my property devised and bequeathed to my two sons herein, however, there shall be included the shares of the capital stock of the Second National Bank of Lexington, Kentucky, owned by me, and after my said stock is so set aside, my executor hereinafter named shall equalize my daughter, Jane R. Graves, with my said sons in the distribution of my estate as herein directed, according to the value of the property received by my said sons respectively.

"Third: I hereby nominate and appoint Thomas L. Adams as Executor of my will. I hereby give to him the power to sell and convey any and all real and personal property owned by me at the time of my death, which may be necessary in the settlement of my estate, or in the division thereof.

"Fourth: I hereby direct that the portions of my estate, devised to my children herein, shall be held for them in trust by Thomas L. Adams, as Trustee. In the event Thomas L. Adams should fail to qualify as Executor and Trustee under my will, or in the event of his death, I hereby nominate and appoint Gatewood Gay as his successor, both as Executor and as Trustee hereunder. Said Trustee and his successor, during the period that said property is held in trust for my said children, shall have the right and power to hold and vote the shares of the capital stock of the Second National Bank of Lexington, Kentucky, herein bequeathed to my sons. I hereby direct said Trustee to vote said stock for the election of Andrew Mitchell as Director of said bank, after my death. Said Trustee shall have the right to sell and convey any property held by him as Trustee, including the right to sell said stock in the Second National Bank of Lexington, Kentucky, provided that if any sale is made of said stock, all of said stock shall be sold at the same time.

"Fifth: During the minority of each of said children, said Trustee shall apply the net income derived from the management of the trust estate of each of such

children, to the support, maintenance and education of such child or children. Said Trustee shall have the right to invest and reinvest said property held in trust, and during the duration of said trust the net income shall be paid to the beneficiaries thereof, after they respectively become twenty-one (21) years of age, in accordance with their respective rights.

"Sixth: I hereby direct that the Executor of my estate and the Trustee of my estate, herein named, shall be required to execute bond with surety thereon, as provided by law.

"Seventh: I hereby authorize and empower the Trustee of my children, or his successor, in his discretion and if he deems it wise, to deliver to my said children, when they respectively arrive at the age of thirty (30) years, such portions of the personal estate bequeathed to said Trustee for them, as in his discretion he may think best. My Trustee shall, so long as he deems it prudent, continue to vote the stock in the Second National Bank for the election and retention of the same officers, agents and employees thereof, as those by whom said bank is now managed and controlled."

It is to be observed that the will contains no specific or definite statements as to when the trust created shall terminate. To determine the question requires in a special way a study of all the language of the will.

The appellants, who are the children and cestuis que trustent, maintain that their father's purpose was to place the real estate devised them in trust only during their minority. They contend that such purpose appears on the face of the will, but any ambiguity may be resolved in favor of their position by the extrinsic evidence which they submitted but which the court disregarded as unnecessary. The appellee, the trustee, maintains that the trust continues until the death of each beneficiary respectively. We deem it necessary to consider only the provisions of the will itself in the light of the general situation or surrounding circumstances of the testator as appear in the pleadings and accepted by both sides in the case.

The will was executed February 19, 1942. The testator died early in September of the same year. He was

66 years of age. His two sons were 16 and 14 years old, respectively, and his daughter 12. Mr. Graves was a large stockholder and the president of the Second National Bank of Lexington and also of one of the largest tobacco warehouse companies in the country. He had owned 3,900 acres of bluegrass land and in addition a life estate in some 200 acres more. But fourteen months before he made his will he had conveyed 2,200 acres to his three children, naming himself as trustee. The children took a life estate with the remainder to their issue or collaterals in the same way described in the will. The deed of trust also provided that, when each child became 21 years of age, the net income should be paid over to him or her respectively, and when each became 25 years of age, the property should be equally divided and each child's portion be set aside to him or her with the right to take possession and to manage, operate and control the same for and during the term of his or her natural life. One of the purposes of this conveyance as stated in the deed of trust was "for the purpose of training their said children and giving them certain experience in the management of property under their supervision during the lives of the parties of the first part." Mr. Graves executed a contract of partnership between himself personally and as trustee of his children whereby he operated the several farms together, an aggregate of over four thousand acres. Afterward, and before the execution of his will, he and his wife had separated and she had gone to Alabama and subsequently procured a divorce. It appears there had been an agreed financial settlement.

The estate was appraised at over $660,000, but it appears that the personal estate, excepting only the bank stock, has been consumed by taxes and administrative charges. As we have said, there is no issue over the trust provisions as to the bank stock, for they are clear and explicit, and we are concerned only with the trust as it relates to 1,700 acres of land.

The chancellor construed the will as imposing a trust upon the portion of the real estate devised to each child to continue for his or her lifetime. He further adjudged that the trustee and his successor should have full and complete possession of the property for and during the life of the respective beneficiaries. The court

declared that the trustee could lease to each child his or her portion of the realty when they become 21 years of age, respectively, for a nominal rent sufficient to defray the taxes, insurance, upkeep and other legal charges. That part of the judgment is not challenged.

To sustain their position the appellants submit an able analysis of the will, clause by clause, and argue that each is consistent one with the other and with the instrument as a whole so that it does, in fact, reveal an intention to impose the trust on the real property only during the minority of the children respectively. They dissect the will and tie the parts together to form a pattern which makes a plausible argument for their conclusion.

The second paragraph of the will clearly devises each child a life estate in his and her portion, free of the encumbrance of a trust or any other restriction. This seems to contemplate a division and apportionment of the land among the children equally according to value. The appellants place stress upon the absence of a provision indicating that the children should receive only the income. But the will does not end here. This is but a part of it. The third paragraph grants power to the executor therein named to sell or convey any of the estate he may deem necessary to settle the estate or to make the adjusted apportionment among the children.

The fourth paragraph directs how those portions are to be held, namely, in trust, with the added provision as to the voting of the bank stock and the power to sell it. Other than as to the bank stock there is but a mere statement that the property should be held in trust, and the appellants submit that as to the real estate it is ineffectual for it simply creates a dry trust without any duty imposed upon the trustee and without any expression as to its duration. The argument is supported by Winn v. William, 292 Ky. 44, 165 S.W.2d 961. But this is not the end of the will.

The fifth paragraph is the most crucial part of the will as it relates to the point in issue. The appellants contend that the initial phrase, ''During the minority of each of said children,'' applies not only to their ''support, maintenance and education'' but likewise to the second sentence that bestows authority upon and directs

the trustee "to invest and reinvest said property held in trust and during the duration of said trust the net income shall be paid to the beneficiaries thereof after they respectively become twenty-one (21) years of age in accordance with their respective rights." It is submitted that the only "duration" mentioned is "during the minority," and argued that a transposition of the conjunction "and" clarifies the expressed intention that it is only the accumulated unexpended net income to be distributed. They would have the sentence read: "Said trustee shall have the right to invest and reinvest said property held in trust during the duration of said trust *and* the net income shall be paid to the beneficiaries thereof after they respectively become twenty-one (21) years of age in accordance with their respective rights." We cannot accede to the contention. It does not seem to us that the second sentence hangs upon the initial phrase, "During the minority of each of said children." It is complete in itself and refers to the payment to them of the net income from "the trust estate," from the management of which the income was derived. And the phrase, "in accordance with their respective rights," without doubt relates to the right of each child to one-third of the entire estate for life.

Reading this fifth paragraph with the second paragraph of the will, the life estate is qualified thereby; and reading it with the fourth paragraph, the trust is made an active one.

The sixth and seventh paragraphs have no relevancy to the question before us unless it be that the absence of a provision for the termination of the trust as to the real estate was because the children would have already come into the possession and management of their respective portions when they had attained their majority, or nine years sooner than the discretionary termination of the trust in the personal property therein provided. On the other hand, however, the absence of reference to the real estate permits the assumption that the testator did not intend that the trust therein should then, or at any time, terminate short of the death of the beneficiaries. An intention is not to be deduced from what the court may think the testator wished or even intended to say but did not say.

As to the circumstances, stress is laid upon the fact that in the deed of other land to his children the testator had conveyed each of them a life estate qualified by a trust ending when they became 25 years old; also upon the stated purpose of the conveyance to be that of training the children in the management of the property. It is argued that this is indicative of a purpose to have the testamentary trust end when they became 21 years old. The logic of this deduction is weakened by the fact that in the interim of the execution of the two documents the father and mother had separated and were soon to be divorced. His wife had joined in the deed and was named in it as successor trustee upon his death. This change in the situation and relationship of the family cannot be ignored. It affords some reason for restricting the life estate in the devised property to the children. The statement in Nunn v. Peak, 130 Ky. 405, 113, S.W. 493, 495, is pertinent here:

"The confidence of the settlor was in the trustee—not in the beneficiaries. They were to be provided for, and the mere fact of the establishment of the trust without limitation as to the time negatives the idea that the settlor had confidence in the judgment of the cestuis que trustent."

The force of a will lies in the instrument as a unit. The intention of the testator is to be discerned by treating it as a unit, or, to use a term somewhat worn, by taking it by its four corners, and applying it to the subject matter and the surrounding circumstances. It is that intention to which the courts must be faithful.

Viewing the will in this manner, it is manifest that the predominant and primary provisions are that each child was devised a share in the estate for life only, that it was placed in trust, and that they should receive the net income. The appellants rely upon the proposition that where a trust is created for an infant without a stipulation as to its duration, it will be presumed to terminate when the beneficiary reaches his majority because its presumed purpose is accomplished. The proposition loses force where, as here, each beneficiary was very definitely given only a life estate in the property placed in trust. That fact rather creates the presump-

tion that the trust should continue until that estate itself terminates.

We concur in the construction of the will by the chancellor. The judgment is affirmed.