## Points et al. v. Points et al.

February 28, 1950.

Ward Yager, Judge.

John L. Vest and Lee Lanter for appellants.

L. M. Ackman for appellees.

MORRIS, COMMISSIONER—Affirming.

E. W. Points, then about 65 years of age, died in April of 1948, leaving the following will:

"I, E. W. Points, being of sound mind and memory this day make myself.in my own handwriting this my last will and testament. To wit: I bequest to my beloved wife, Grace E. Points, all of the Real Estate and personal property and everything that I may possess at the time of my death, to have and to hold the same. If she remains my widow.

"I appoint my wife, Grace E. Points, executrix without bond.

"My wife, Grace E. Points, can use all the personal property as she thinks best for her own comfort and support, and if she thinks it best to sell the real estate she had the right to sell any part or all of the real estate, as she may think best, and at her death, she may dispose of all the real estate, if there be any, and personal property, according to the best of her own judgment.

"I am not forgetting my heirs at law E. C. Points and his heirs, and Marjorie and Judith Points, heirs of E. C. Points.

"Given in my own handwriting, this the 21st day of October 1940.

E. W. Points."

He left surviving his widow, and next of kin, a brother and two nieces, daughters of a deceased brother. In the action below the widow, individually and as executrix, was plaintiff; the heirs-at-law and John H. Pennington and G. B. Ferguson, purchaser of the real estate mentioned in the will, were defendants.

In her petition seeking a declaration of rights, she alleged that at the time of testator's death he owned about 360 acres of land which was divided into 5 separate parcels. These were sold at public auction in May 1948; Pennington and Ferguson purchased four of the tracts at the bid price of $34,100, paying down 20 per cent. Sam Webb bought the fifth tract for $7500, and assigned his right to Pennington and Ferguson. Appellant asserted that under the will she became seized of the fee simple title to the real estate and was given power to sell free of burden. On the contrary it is contended. that she took a limited estate, such as might be defeated upon her remarriage, with reversionary interest to the estate.

The joint purchaser answered, agreeing that if they were able to secure good title they would pay the remainder of the sales price; they ask for a construction of the will and for determination as to the control of the proceeds of sale, if it be concluded that they may receive a title. Thereafter, in both capacities, Mrs. Points executed title bond to the purchasers, giving them possession and binding herself in writing to execute a general warranty deed if and when it was finally determined that she could do so.

Upon submission the chancellor adjudged first as to the widow's right to the personal property. He then confirmed the assignment by Webb and the title bond, and further held that under the terms of the will Mrs. Points "has full authority and is bound as executrix of the estate to execute a general warranty deed conveying the lands to Pennington and Ferguson jointly upon pay-

ment of the remainder of the purchase price. It was adjudged that under the will Mrs. Points, after payment of debts, costs," etc. "Shall take title to the proceeds of the balance of the said real estate proceeds to use, enjoy or invest same, and to use the income so long as she remains the widow of testator, but that her right to the possession, use and enjoyment of the proceeds derived from the sale of * * * the real estate shall terminate upon her marriage."

The court then adjudged that under the terms of the will Mrs. Points "has the right to make testamentary disposition of all the real estate or the proceeds thereof, as well as the personal property devised, conditioned upon her remaining the unmarried widow of the testator." Mrs. Points excepted to so much of the judgment which decreed that her rights to the property terminated upon the event of remarriage, and prosecutes her appeal and this is the sole question for determination.

There can be no doubt that testator had the right to limit the use and enjoyment of the estate during appellant's widowhood. Swearingen v. Swearingen's Ex'x, 302 Ky. 107, 194 S. W. 2d 79. The rule is that a testator in creating an estate by will, whether absolute or for life, may provide that its enjoyment may be subject to any burden imposed, so long as the imposition does not contravene any rule of law or public policy. Baker v. Baker, 191 Ky. 325, 230 S. W. 293; Childers v. Welch, 304 Ky. 700, 202 S. W. 2d 169.

Counsel for appellant concedes that the rule to be applied in the construction of the wills is correctly laid down in the recent case of Hanks v. McDanell, 307 Ky. 243, 210 S. W. 2d 784, that is the "Polar Star" rule, to the effect that the intention of the testator is the chief point to be ascertained by a consideration of, not parts but the entire document. The rule is that each and every word must be observed and given their usual and ordinary meaning, if in so doing that meaning does not serve to destroy the intent of the testator. Price v. Price, 298 Ky. 608, 183 S. W. 2d 652.

Here we are not called upon to construe the will in the light of technical words. The words "If she remains my widow" are easily understood. Counsel agrees that the word "if" is a typical conditional particle used to introduce another part of a sentence. Here it means

"in the event," or as we held in Ellison v. Smoot's Adm'r, 286 Ky. 768, 151 S. W. 2d 1017, 1019, the word is synonymous with the expression "in case that." We have no difficulty in concluding what testator intended by the use of the quoted words.

However, the main contention of counsel for appellant is that there are two clauses of the will which conflict. This conclusion is reached by entirely separating the first and last clause by the words, "I appoint my wife executrix." The argument is that where there are irreconcilable conflicting clauses in a will the latter clause prevails, citing Arnold v. Simmons' Ex'r, 295 Ky. 516, 517, 174 S. W. 747. However, the rule is not adamant, since in the construction of wills it is the duty of the court in attempting to reach the true intent, to reconcile such clauses as are or may appear to be in conflict. The latter may be adopted, if in so doing the intent of the testator is not completely destroyed. Price v. Price, supra; Cecil v. Cecil, 161 Ky. 419, 170 S. W. 973. The court should not disturb the first clause, further than to give effect to the latter. Kirk's Adm'r v. Massie, 200 Ky. 760, 162 S. W. 2d 783.

The position of appellant seems to be that the conflict here arises because the second clause does not contain the words "If she remains my widow." This appears to be the only conflict. The last clause was apparently inserted by testator, a layman, to make it clear that as executrix she might dispose of the property as she deemed best, and as an individual make testamentary disposition. They seem to us to be words of privilege creating right rather than obligation.

To take the position advanced by appellant, that is to adopt the latter clause, without taking into consideration the strongest words in testator's will showing a clear intent, would be to close our eyes to the cardinal rule, which appellant's counsel concedes to be controlling. We are unable to do this in view of the fixed rule that we must consider the whole will, all languages used, giving usual and ordinary meaning to commonly used words or expressions. The court in construing a will, in order to ascertain the testator's intent, may not strike out one sentence or clause without taking into consideration other sentences, clauses or words. Cottrell v. Cottrell, 305 Ky. 663, 205 S. W. 2d 312. The rule laid

down in the Hanks v. McDanell case has been followed in Graves v. Adams, 310 Ky. 74, 219 S. W. 2d 414.

In view of the rulings of the court as evidenced by the cases cited, and many others which may be noted from reference to Kentucky Digest, Wills, Key 467 and 470, we are of the opinion that the chancellor was correct in his construction that the estate devised, and its use, including the proceeds from the sale of the land in question, was to terminate upon the remarriage of appellant, and that title to purchaser was good.

Judgment affirmed.