## Crutcher et al. v. Elliston's Ex'rs et al.

March 23, 1945.

614

F. A. Harrison, G. L. Tucker, R. L. Vincent and E. H. Walton for appellants.

H. W. Alexander and L. M. Ackman for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part, reversing in part.

The residuary estate of O. P. Elliston was devised to his grandchildren, Charles O. Elliston and Mrs. Marie Jo Berge, jointly, with remainder to their children. The will further provides that in the event Charles O. Elliston should die without issue, the portion of the estate received by him shall go in equal shares to the living children of his sister. Mrs. Berge was formerly the wife of E. J. Crutcher, by whom she has two children, Ernest J. Crutcher, Jr., and Joan Elliston Crutcher. She has a third child, Charles Frederick Berge. Charles O. Elliston has one child born since the institution of

this suit. The suit was filed by E. J. Crutcher as next friend of his two children, seeking, among other things, to have the estate settled and the life tenants execute bond to secure the estate for the remaindermen, or to have same placed with a trustee. Elliston and Mrs. Berge were nominated as executors by the testator and they qualified. She is the statutory guardian of her children. The custody of the children born of her marriage to Crutcher was awarded to her in a divorce decree entered in June, 1938. A guardian ad litem was appointed for the infant defendants and he joined in the prayer of the plaintiff.

The testator had made a bank time deposit of $20,000 more than a year before his death, with the certificate issued in the names of "O. P. Elliston, or C. O. Elliston and Marie Jo Berge." The certificate was past due when O. P. Elliston died March 2, 1942, and C. O. Elliston and Mrs. Berge cashed it and placed one-half in their respective personal savings accounts, but later transferred the amounts to the credit of themselves as executors. With the estate augmented by this amount, the net residuum for each life tenant is approximately $16,000.

Mrs. Berge bought a home in Owenton at a cost of $5,130 and took title in her husband and herself, with a survivorship clause. When it had been paid for out of the estate she and her husband signed a plain note to herself as trustee of her children in order to evidence their interest. This was placed in her safety deposit box. Shortly after this suit was filed, upon advice of counsel they executed a mortgage on the property to Mrs. Berge "in trust for the children of her body", which is the language of the will. At the time of the trial Mrs. Berge had invested $6,000 in Government Bonds and registered $2,000 in the names of each of her three children. She had $3,800 on deposit in a savings account with which she intended to buy Government Bonds. Bank stock of the approximate value of $1,300 is registered in the names of Mrs. Berge and Charles O. Elliston jointly, Thus, it is shown that so far as the Crutcher and Berge children are concerned, they are protected by the real estate mortgage and have bonds in their own names for at least $11,000 of the entire $16,000 estate.

Of the estate held by Charles O. Elliston as life tenant, $6,000 is invested in Government Bonds, regis-

tered in his and his child's name, with right of survivorship. The balance is in other bonds and cash and, as stated $650 jointly with Mrs. Berge in bank stock.

The rule with respect to requiring security for the conservation of an estate for remaindermen has been variously stated with emphasis placed upon its different elements according to the particular case being decided. The cardinal purpose is to effect the intention of the testator or grantor. If that was to restrict the life tenant merely to receiving the income and to insure the estate intact to the remaindermen, the court will scrutinize the situation with greater care from the viewpoint of safety or security and will resolve every doubt or possibility against the life tenant. Indeed, where that is the situation and the estate is in money or liquid assets, the court ordinarily requires the execution of bond without regard to the element of possible loss. Greater liberality is allowed the life tenant where the testator manifested an intention that the life tenant should have possession and the use of the property, especially where there appears no disposition to waste or destroy the estate. In such a situation, no security is required. Sometimes the general rule is stated to be that security will not be required in the absence of danger of loss or destruction of the property. Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437; Cecil v. Cecil, 161 Ky. 419, 170 S. W. 973; Trustees Presbyterian Church v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237; Thomas v. Thomas, 220 Ky. 101, 294 S. W. 776; Buckman's Trustee v. Ohio Valley Trust Company, 288 Ky. 114, 155 S. W. 2d 749, 138 A. L. R. 436.

By the terms of this will the grandchildren, the life tenants, were given the right "to have and to hold (the estate) during their natural lives", and in a codicil it is confirmed that the estate is "to be held and enjoyed by them for their natural lives." This manifests an intention on the part of the testator that they should have the possession and use of the property that they might enjoy it.

The appellants point the finger of suspicion to the fact that the parents of the children had qualified as executor and executrix with a bond of only $10,000, with each of them signing as surety for the other, whereas, the estate was appraised at $55,000. As stated, some of it was in real estate and the certificate of deposit of

$20,000 belonged to them personally and did not constitute a part of the estate although appraised as such. Some Government Bonds already stood in the name of the two Berge children and another devisee. It is said to be also significant that when Mrs. Berge qualified as guardian of her children her husband had signed her bond as surety, although he owned no real estate. He testified that he owned personal property sufficient to cover the bond. These were matters determined judicially by the county court and the estate has already been settled satisfactorily. We see nothing about any of these acts to excite suspicion. Likewise, in the investment of the property in the home; certainly after the mortgage was executed.

On the other side of the case is the expressed intention that the life tenants, who are the testator's grandchildren and in whom it may be well presumed as natural he was especially interested, were given the right to use and enjoy the estate while they lived. C. O. Elliston is cashier of the Bank of Williamstown and Mrs. Berge's husband is County Farm Agent of Owen County. Their own disposition in regard to the estates is reflected by their action in (1) voluntarily including in the devised estate $20,000 which they were entitled to individually; (2) Mrs. Berge placing a mortgage on the home in favor of the children when she was advised of her responsibility; and (3) having placed the entire title to $6,000 of bonds in the names of her three children. Only $5,000 remains unsecured. There is no fact or circumstance showing any disposition to waste or destroy the estate on the part of either parent, nor any condition of character or personal habits that indicates a present hazard of loss. It may well be presumed they are as much concerned about the financial welfare of their children as was their great-grandfather.

We concur in the judgment of the chancellor that no bond should be required or trustee appointed. Of course, if conditions should change, the remaindermen or their representative may then be heard as to the situation at the time.

Evidence was heard upon the motion of the plaintiff for an allowance of an attorney's fee to be paid by the estate. The court allowed the attorneys a joint fee of $500, but ordered that the costs be paid by E. J. Crutcher, Sr., who had brought the suit as next friend of the

infant remaindermen. The attorneys have joined him as appellant and insist that the fee is inadequate. He insists also that the order as to the costs is entirely erroneous.

There were a few other issues raised, such as to a division line of some real property as between the estate and Charles O. Elliston individually. But the main point was the matter of security for the interests of Crutcher's children. The personal representative had not made a settlement, but two years since their qualification had not expired, and there was some litigation, so that it could not be said that the delay had been unreasonable. Final settlement was made about six months after this suit was filed. Although the right of the plaintiff to have a settlement was predicated upon allegations he did not substantiate, and he has lost his contention that security should be given by the life tenants, it cannot be said that the suit was frivolous. It cleared the atmosphere and definitely established the rights of the infant remaindermen, both with respect to the responsibility of the life tenants and the amount of their estates.

Several lawyers testified that there was an agreement of the local bar that the fee for prosecuting a suit to settle a decedent's estate should be at least 5% of the amount and that such an allowance, which would have been $2,750, would be a reasonable attorneys' fee in this case. The current schedule of law fees is only one item to be considered. The ability and diligence of plaintiff's counsel in the case are not questioned and the time in which they were engaged is not to be minimized. See Wilhoit, Director of Banking v. Brown, 295 Ky. 732, 175 S. W. 2d 529, and Howell v. Highland Cemetery Company, 297 Ky. 659, 181 S. W. 2d 44, as recent cases considering the factors that enter into the allowance of attorneys fees.

The statute, KRS 412.070, authorizes the allowance of reasonable expenses and costs to one or more distributees of an estate who prosecute a suit for its settlement for the benefit of others interested with them, which allowance is to be paid out of the fund recovered. This gives the courts much latitude so that it has always been held to be a matter resting in the discretion of the trial court. Gernert v. Liberty National Bank & Trust Company, 284 Ky. 575, 145 S. W. 2d 522. In making such

.an allowance, the court is not bound by any schedule of fees or even by a contract made by a personal representative with an attorney. Erdman's Adm'r v. Erdman's Adm'r, 231 Ky. 219, 21 S. W. 2d 258. In this case the executors were also entitled to an allowance for their attorney's fees and other expenses of the litigation, which fact cannot be ignored. All things considered, we do not think the allowance of $500, to be paid by the estate to plaintiff's attorneys, is unreasonable. This is not to say that they did not earn more or have no recourse against their client personally for their services.

However, we are of opinion that the court was in error in adjudging that the plaintiff who sued as next friend should personally bear the other court costs. If he was entitled to an attorney's fee, then he was entitled to have the other costs paid by the estate as expressly provided in KRS 412.070. This is so notwithstanding Section 37 of the Civil Code of Practice provides that a next friend who brings an action is liable for the costs unless he be allowed to sue in forma pauperis. The two sections must be read together.

The judgment is affirmed, except as to the court costs, and it is reversed in that respect.

Judge Cammack not sitting.