## Conlee v. Conlee et al.

### Oct. 26, 1945.

E. C. O'Rear and Allen Prewitt for appellant.

S. T. Davis and D. L. Pendleton for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This declaratory judgment action was filed in the Powell circuit court by appellant, and plaintiff below, Rose C. Conlee, against the other heirs, children and grandchildren of Lina Conlee, the latter having executed her will on April 12, 1912, and died on February 13, 1913.

Lina Conlee resided with her husband and some of her children at the time of executing her will, and at her death, in Powell County, Kentucky. She left seven children who survived her with one predeceasing her leaving three surviving children who were grandchildren of testatrix. One of the seven surviving children was Robert N. Conlee, Sr. He died on March 15, 1921, leaving surviving him plaintiff (his widow) and two infant children Margaret Pearl Conlee and Robert N. Conlee, Jr. Margaret died in infancy in August, 1926, leaving no issue, and her brother, Robert N. Conlee, Jr., died an infant in November, 1926, without issue.

The second clause of the will of Lina Conley says:

"To my husband, Thomas Conlee, I will and bequeath all my estate, personal, real and mixed. To have and to hold during his natural life, to use, occupy and enjoy as he deems proper, and also grant to him a power to sell and dispose of the real estate and invest the proceeds thereof in other lands in Kentucky if he should deem it proper and beneficial to my estate to do so, provided, however, the real estate now owned by me if sold, the purchase money from the sale out of same, shall be reinvested so that title to same shall contain simply a life estate to my husband, and at his death, after first having paid, if same is not paid before his death, ($500.00), Five Hundred Dollars to my youngest child, Minnie Conlee,

to make her equal with my other children, and ($35.00) Thirty-five dollars to my youngest son, Clay Conlee, then, the remainder of my estate at the death of my said husband, Thomas Conlee, shall be divided equally between my children, or their survivors. I mean by this, will to make my husband, Thomas Conlee, trustee of my estate, after the payment of my just and legal debts, granting to him the privilege of selling my real estate and investing the proceeds in other lands for the benefit of my children *and their heirs,* giving to my said husband life estate in said property, the proceeds and income of which he may use as he desires, and the bequest to Minnie and Clay is to make them equal with the other children. And in case the said Thomas Conlee sees fit to make them equal as herein directed before his death should he outlive me then the clause providing for them shall be void.'' (Our emphasis)

Plaintiff's contention, as stated in brief, is that ''Lina Conlee's bequest and devise of all her estate in remainder to her 'children or their survivors' means her 'children and their heirs,' '' and which, if correct, would create a fee simple vested title in remainder in each of her children in and to an undivided 1/8 interest in the estate of testatrix; whilst appellees contend that the *vesting* of title in remainder, following the death of Thomas Conlee, the life tenant, did not occur upon the death of testatrix, but was postponed until the death of her husband, the life tenant, and that only those children who were living at that time are entitled to share in the distribution of her devised remainder estate. The trial court adopted the construction of defendants, and appellees, and dismissed plaintiff's petition, from which judgment she prosecutes this appeal.

If appellant's counsel are correct in their interpretation of the will, then it follows that upon the death of Robert N. Conlee, Sr. (one of the eight children of testatrix), his two children inherited his interest, he having died intestate. Those two children, as we have seen, were Margaret Conlee and Robert N. Conlee, Jr., the former of whom died in August 1926, and her one-half undivided interest in and to 1/8 of the estate of the testatrix was inherited by her surviving brother, Robert N. Conlee, Jr. When he died in November 1926, an infant and without issue, the 1/16 interest

in the estate of testatrix that he inherited from his father descended under subsection (2) of section 391.020 of KRS "to that parent and that parent's kindred, and if there is none, then in like manner to the other parent and his kindred." But that statutory rule of inheritance of *real* property does not apply as to the 1/16 interest in the realty of testatrix that Robert N. Conlee, Jr., inherited from his deceased sister, and it is the latter interest that plaintiff seeks to recover in this action, as the mother of Robert N. Conlee, Jr.

The next section of KRS in its subsection (1) (a) says: "The personal estate of an infant shall be distributed as if he had died after full age." KRS 391.030. Therefore, the whole of the personal property so obtained by Robert N. Conlee, Jr.—½ from his father and the other half from his deceased sister—descended to plaintiff, his mother, to the exclusion of any collateral kindred. Plaintiff, therefore, prayed that the interpretation contended for by her counsel be adjudged the correct one and that she be adjudged the owner of a 1/16 interest in the real property of the testatrix, and a 1/8 interest in and to her personal property. Our task, therefore, is to determine which of the two interpretations is the correct one.

Before embarking upon that undertaking we deem it appropriate to call attention to the fact that as recorded in the text of 28 R. C. L. in the discussion of the subject of "Wills," section 165, says that:

"Very few classes of questions are more frequent or more perplexing in the courts than the construction of wills. Over two hundred years ago Lord Coke made the observation, which is nearly as true now as it was then, that 'wills and the construction of them do more perplex a man than any other learning; and to make a certain construction of them, this excedit jurisprudentum artem', and Judge Story has said that any attempt even to classify the cases on the construction of wills, much less to harmonize them, is full of the most perilous labor. Nevertheless, with the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, the courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to

be decisive. All rules of construction are designed to ascertain and give effect to the intention of the testator, for the very purpose of the construction of a will is to ascertain the intention of the testator as expressed in the will, viewed in the light of the attending circumstances. Accordingly, while the courts are bound to have regard to any rules of construction which have been established, the various rules which exist serve not so much to restrict or constrain the judicial mind as simply to guide and to indicate the probabilities in the absence of countervailing considerations, and none of them are to be followed blindly if they lead to subversion of what was clearly the intention of the testator. The rules of construction are to be employed only when doubt exists, and when a testator employs language that is clear, definite, and incapable of any other meaning than that which is conveyed by the words used, there is no reason for resorting to rules of construction. Greater latitude is allowed in the construction of wills than in the construction of deeds.''

In the next section (166) the entire substance of the inserted section is epitomized by Sir William Jones by the statement ''that no will has a brother,'' to which we might add ''especially a twin.'' Further along in the same section the text says:

''Two wills rarely use exactly the same language, and every will is so much a thing of itself, and generally, so unlike other wills that it must be considered by itself as containing its own law. In making the will a testator does not often have in mind any particular rules of construction applied to other wills. Frequently a very slight change in the verbiage calls for a different construction of two wills much alike in other respects, and when used under different circumstances with different contexts, the same words may express different intentions. Accordingly, in the construction of wills the courts are not required to adhere rigidly to precedents, and little aid is to be derived from a resort to judicial determinations in other cases apparently similar.'' See Price v. Price, 298 Ky. 608, 183 S. W. 2d 652.

Such observations, as so made in the excerpt from section 166, are well known to all members of the profession, as well as applied and adopted by courts who are guided in making such interpretations by the un-

deviating rule (frequently referred to as the "polar star") that the intention of the maker of the will, if not contrary to an established principle of law, shall always prevail. In arriving at that intention resort is sometimes made to subordinate or assisting rules, but when and only when the intention of the testator, or testatrix, is somewhat obscured and to some extent doubtful.

Turning now to the language of the will under consideration, it is seen that the testatrix gave to her husband a life estate in and to all of her property, both personal and real, and vested him with the power to sell her real estate and reinvest it in other real estate, if he concluded it was beneficial to her estate, the title to which should be taken as stated in her will, and at his death the remainder, not remnant, of her estate—after equalizing two of her children with the other six—"shall be divided equally between my children, or their survivors." If nothing else had been written by testatrix in her will, there would then be created considerable confusion and doubt as to the meaning intended to be expressed by the word "survivors" who were survivors of her *children* and not necessarily their heirs. Therefore, the doctrine as announced in some of the cases relied on by appellees might control the interpretation to be given to the language of the instant will. But testatrix immediately following the last excerpt from her will (and which she had the right to do) inserted her own interpretation as to what she meant by the expression "or their survivors" by employing this language:

"I mean by this will to make my husband, Thomas Conlee, trustee of my estate, after the payment of my just and legal debts, granting to him the privilege of selling my real estate and investing the proceeds in other lands for the benefit of my children *and their heirs.*" (Our emphasis).

To our minds such self-construing language dispenses with all doubt as to the intention of testatrix in the employment of the phrase "or their survivors" in that part of her will preceding her expressed intention which was to devise and bequeath to her children an absolute fee simple title to her property in remainder after first carving out a life estate for her husband. The cases of Fischer v. Steopler, 152 Ky. 317, 153 S. W. 420; Brown v. Blackwell, 178 Ky. 797, 200 S. W. 13; Ball v. Books,

222 Ky. 143, 300 S. W. 330; Fugazzi v. Fugazzi's Committee, 275, Ky. 62, 120, S. W. 2d 779, and Carroll v. Carroll's Ex'r, 248 Ky. 386, 58 S. W. 2d 760, sustain such interpretation, even without the self-construing language of testatrix; but when her will is considered as a whole—including, of course, her self-interpretating clause—all doubt of her intention, as we conclude, was eliminated resulting in her devising and bequeathing by her will her property to her husband for his life with absolute title in remainder to her children and their heirs, the word "heirs" being one of limitation and not of purchase.

The contention of appellees' counsel is that the remainder interest of the estate of the testatrix in this case as shown (as they contend) by the language she employed created a contingent remainder interest to her children. If that position be incorrect, then the entire defense of appellees falls to the ground. In Vol. 3 of Caldwell's Judicial Dictionary, page 2895, and in Vol. 5 of the Supplement thereto, page 2873, are a long list of this Court's opinions, as well as reference to texts, in which we and the writers of the texts said—in distinguishing a vested from a contingent remainder—that: "The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." The cases from this court are cited supporting that statement, and on the next page, 2896, the writer says (supported by cited domestic cases) that: "The mere fact that an estate is to take effect and be enjoyed after the termination of an intervening estate will not prevent both estates from being vested at the same moment." The text in cited Volume 6 of the same publication is to the same effect, and later cases from this court are listed in substantiation thereof. In this case the children of the testatrix were capacitated to take possession of the remainder interest devised to them at any moment after the termination of the life estate of Thomas Conlee and remained so for many years after the death of testatrix. Therefore, the listed cases in that publication clearly establish the fact that a vested remainder in the children of testatrix was created and took effect at the time of her demise.

Such interpretation is further fortified by the fact that Mrs. Mattie Derickson predeceased testatrix leaving children, and it could scarcely be contemplated that the testatrix intended to disinherit the children of that deceased daughter which would be a possible result if the construction contended for by appellees were the correct one.

The interpretation at which we have arrived renders it, as we conclude, unnecessary to analyze and to undertake to point out the difference between the cases cited and relied on by appellees, since none of them involve wills that could be classified as "brothers" of the instant will, there being in each of them differentiating facts which guided the court in reaching its determination as to the true interpretation of the wills construed in them, they being: Skiles v. Bowling Green Trust Co., 294 Ky. 211, 171 S. W. 2d 235; Ford v. Jones, 223 Ky. 327, 3 S. W. 2d 781; Wren v. Hynes' Adm'r, 2 Metc. 129, 59 Ky. 129.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to overrule the demurrer to appellant's petition, and for other orders consistent with this opinion.