Janet HAMMONS and Jillisa
Hammons, Appellants,

v.

Rosa HAMMONS, Appellee.

No. 2009–SC–000155–DG.

Supreme Court of Kentucky.

Nov. 18, 2010.

Reginald Leonard Thomas, Lexington, KY, Counsel for Appellants.

Gerry L. Calvert, Thomas H. Burnett, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Dr. James W. Hammons died testate on August 11, 2006, leaving his entire estate to his wife, Rosa Hammons (Rosa), for her lifetime. The will vests Rosa with the power to invade the corpus of the estate whenever the income from the estate, plus any money or property she individually possesses, becomes insufficient to provide for her proper maintenance and medical care. After Rosa's death, any remaining assets in the estate devolve to the testator's daughters, Janet and Jillisa Hammons (Janet and Jillisa). In a suit brought by the daughters, the Fayette Circuit Court held (1) Rosa owns a life estate in all the property owned by the testator at his death; (2) Rosa has the exclusive right to occupy and control the property; and (3) Janet and Jillisa are contingent remaindermen. The Court of Appeals affirmed this decision. On discretionary review, Janet and Jillisa contend (1) they received a vested remainder subject to divestment and (2) as vested remaindermen, they have accounting rights, i.e., the right to inspect the property and receive an accounting of both the estate property held by Rosa and her individual property. We reverse the Court of Appeals on the first issue because Janet and Jillisa are vested remaindermen whose interests are subject to divestment, but we affirm on the second issue because Janet and Jillisa do not have accounting rights.

### RELEVANT FACTS

Dr. James Hammons, a physician and resident of Lexington, Kentucky died on August 11, 2006. Dr. Hammons provided by will for his wife, Rosa, and his children by a former marriage, Janet and Jillisa. Rosa received a life estate in all of Dr. Hammons's property and was appointed and qualified as executrix. Janet and Jillisa received a remainder interest in their father's estate. The will provides, in pertinent part:

*Item I*

All of my estate of whatever kind and description and wheresoever located, including any devise or bequest which may lapse or become void, I give, devise, and

bequeath to my wife, ROSA W. HAMMONS, for her lifetime. My said wife during her lifetime shall have the right to sell any property received by her under the terms of this Item and invest and reinvest the proceeds thereof in other property, real or personal, in her absolute discretion. Any sale made by my said wife under the provisions of this Item shall be on such terms and conditions, including credit, as she may deem appropriate, and no purchaser of any property so sold by my wife shall be required to see to the reinvestment of the proceeds of the sale. My said wife during her lifetime shall be entitled to all income realized from this property received under this Item. If at any time during her lifetime the income from the property together with such other money and property which she may have is insufficient to provide for her proper maintenance and medical care, she shall be entitled to use so much of the corpus of this devise and bequest as shall be necessary to provide for such purposes, or either of them; i.e. she must have exhausted all property which she has, including principal and income from her property and the income from the property left to her under this Item before she may invade the principal of the property devised to her under this Item. On the death of my said wife, I give, devise, and bequeath, absolutely and in fee simple, all of the assets devised and bequeathed under this Item then remaining, to my daughters, JANET P. HAMMONS and JILLISA S. HAMMONS, to be divided equally between. In the event either of my daughters should fail to survive me and my said wife leaving no issue surviving her, then such deceased daughter's part shall pass to her surviving sibling. In the event a daughter of mine should fail to survive me and my wife leaving issue surviving, her part shall pass as she by will appoints, and in the absence of such appointment, her part shall pass to the children of such daughter.

*Item II*

If my wife does not survive me, then all of my estate of every kind and description and wherever located, including any devise or bequest which may lapse or become void, I give, devise, and bequeath, absolutely and in fee simple, to by daughters, JANET P. HAMMONS and JILLISA S. HAMMONS, to be divided equally between them. In the event either of my daughters should fail to survive me and my said wife leaving no issue surviving her, then such deceased daughter's part shall pass to her surviving sibling. In the event a daughter of mine should fail to survive me leaving issue surviving, her part shall pass as she by will appoints, and in the absence of such appointment, her part shall pass to the children of such daughter.

*Item IV*

I make, nominate and appoint my said wife, ROSA W. HAMMONS, Executrix of this my Will and direct that no surety be required of her on her bond, and if she should be unable or unwilling to so serve, then I make, nominate, and appoint my daughters, JANET P. HAMMONS and JILLISA S. HAMMONS, as co-executrices of this my Will, or either of them, if either should be unable or unwilling to so serve, and I direct that no surety be required of them on their bonds as such.

By amended complaint filed in Fayette Circuit Court, Janet and Jillisa sought a declaratory judgment that Rosa had only a conditional power to transfer property and, before doing so, must first provide an

accounting of her assets. Rosa filed a motion for summary judgment, seeking a declaration of rights and order quieting title. The Circuit Court granted summary judgment in favor of Rosa, holding (1) Rosa has an unconditional right to sell any and all estate property and (2) Janet and Jillisa are contingent remaindermen and have no right to inspect or receive an accounting of Rosa's assets. As noted above, the Court of Appeals affirmed the Circuit Court's judgment.

## ANALYSIS

The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. *Spencer v. Estate of Spencer*, 313 S.W.3d 534, 537 (Ky.2010) (quoting *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991)). Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions. *Malone v. Kentucky Farm Bureau Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky.2009) (citing *Schmidt v. Leppert*, 214 S.W.3d 309 (Ky. 2007)). Furthermore, it is well established that "[t]he construction as well as the meaning and legal effect of a written instrument ... is a matter of law for the court." *Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992); *see also Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky.2007). In such cases, this Court reviews the issue *de novo. Cumberland Valley Contractors, Inc.*, 238 S.W.3d at 647.

The "polar star rule" of wills construction provides that the intention of the testator, if not contrary to the law, controls. *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky.1990). The testator's intention is derived from considering the will as a whole and no single part may be separated and held up as evidence of the testator's intent. *Id.*; *Russell v. Johnson*, 451 S.W.2d 645, 646 (Ky.1970); *Sherley v. Sherley*, 192 Ky. 122, 232 S.W. 53, 56–57 (1921). Thus, a court's primary duty is to ascertain and give effect to the testator's intent. This task is complicated by the fact that there is seldom precedent directly on point. It has been said no will has a brother, much less a twin. *Conlee v. Conlee*, 300 Ky. 685, 190 S.W.2d 43, 44–47 (1945). It is rare for two wills to use the same, or even substantially similar, language and "a very slight change in the verbiage calls for a different construction of two wills much alike in other respects." *Id.* (quoting *Price v. Price*, 298 Ky. 608, 183 S.W.2d 652 (1944)). To aid in the construction of wills, courts have established canons of construction, which guide the courts to construe wills in favor of "testacy over intestacy, absolute over qualified estates, and early vesting as against contingent rights." *Lincoln Bank & Trust Co. v. Bailey*, 351 S.W.2d 163, 165 (Ky.1961); *Clore v. Clore*, 184 Ky. 83, 211 S.W. 208, 209 (1919). Courts may use canons of construction only when doubt exists as to the testator's intent. When a testator employs clear, definite and unambiguous language, there is no need to resort to canons of construction. *Conlee*, 190 S.W.2d at 46.

## I. Janet and Jillisa Hammons Received a Vested Remainder Subject to Divestment.

Rosa argues Janet and Jillisa received a contingent remainder because

their ability to take is contingent (1) on there being any property left to take, given Rosa's ability to invade the corpus, and (2) on them either surviving Rosa or predeceasing her but leaving issue of their own. This interpretation of the will employs a colloquial, rather than a legal, definition of the word "contingent" and reflects a misunderstanding of the distinction between a contingent remainder and a vested remainder.

Whether a testator intended a contingent remainder or a vested remainder is a relatively common question and our case law includes many opinions distinguishing these two types of remainders. *Conlee,* 190 S.W.2d at 47 ("The mere fact that an estate is to take effect and be enjoyed after the termination of an intervening estate will not prevent both estates from being vested at the same moment."); *Montgomery's Ex'r v. Northcutt,* 292 Ky. 622, 167 S.W.2d 317, 320 (1942) ("A remainder interest may be a vested one although the right of possession and enjoyment of the property is made to depend on some uncertain future event."); *Fidelity & Columbia Trust Co. v. Tiffany,* 202 Ky. 618, 260 S.W. 357, 359 (1924) ("A vested interest is a present right ... which carries with it an existing right of alienation, even though the right to possession or enjoyment may be postponed to some uncertain time in the future.... A contingent estate is one which gives no present right, but the vesting of which depends upon some uncertain event in the future, or the happening of a certain event in the future at an uncertain time...."); *Williamson v. Williamson,* 57 Ky. 329, 18 B. Mon. 329 (1857) ("A vested remainder depends upon an event which must happen. A contingent remainder depends on an event which is uncertain and may never happen. A vested remainder is to a person *in esse* and ascertained. A contingent remainder is to a person not *in esse* or not

ascertained."); *see also Phelps v. Sledd,* 479 S.W.2d 894, 897 (Ky.1972); *Curtis v. Citizens Bank & Trust Co. of Lexington,* 318 S.W.2d 33, 35–36 (Ky.1958); *Lincoln Bank & Trust Co. v. Lane,* 303 S.W.2d 273, 274–75 (Ky.1957); *Hurst v. Russell,* 257 Ky. 78, 77 S.W.2d 355, 355–56 (1934); *Slote v. Reiss,* 153 Ky. 30, 154 S.W. 405, 406 (1913); *Roach v. Dance,* 26 Ky. L. Rptr. 157, 80 S.W. 1097, 1098 (1904).

In *Carroll v. Carroll's Ex'r,* 248 Ky. 386, 58 S.W.2d 670, 672 (1933), the testator left his personal assets in a fund for the care of his wife, with any remaining at her death to his sons, unless "either should die before she does, leaving living children, [in which case] they will get his share." The Court held the sons had a vested remainder in the trust fund, noting the conditional language, "if either should die before she does, leaving living children ...." did not convert the vested interest into a contingent remainder. *Id.*

In *Conlee,* the testator gave to her husband, "all my estate, personal, real and mixed. To have and to hold during his natural life, to use, occupy and enjoy as he deems proper, and also grant to him a power to sell and dispose of the real estate and invest the proceeds thereof" with any remainder after her husband's death to her children. 190 S.W.2d at 44. After discussing the distinctions between contingent and vested remainders, this Court (then known as the Court of Appeals) held the husband took a life estate and the children had a vested remainder because they "were capacitated to take possession of the remainder interest devised to them at any moment after the termination of the life estate." *Id.* at 47.

The law makes a further distinction between a contingent remainder and a

vested remainder subject to divestment.[1] Unlike a contingent remainder, which does not vest until the happening or non-happening of a condition precedent, a vested remainder subject to divestment vests immediately, though the remaindermen's ability to take possession depends on a condition subsequent. *Bailey,* 351 S.W.2d at 164–67; *Carroll,* 58 S.W.2d at 672 ("On a condition precedent, a title does not pass or vest until it is performed, while a condition subsequent operates by way of a defeasance of the title that has once vested."); *Tiffany,* 260 S.W. at 359; *Fulton v. Teager,* 183 Ky. 381, 209 S.W. 535, 536 (1919).

In *Zinsmeister's Trustee v. Long,* 250 Ky. 50, 61 S.W.2d 887, 890 (1933), the Court noted, "The possibility of defeasance does not transform into a contingent remainder what would otherwise be a vested remainder." In *Lincoln Bank & Trust Co. v. Lane,* this Court determined a beneficiary, Francis Ramey, took a vested remainder subject to divestment under the terms of a trust that provided the grantors retained the right to sell the family home but, if they died without doing so, the home passed to their daughter and, upon her death, to Francis Ramey. 303 S.W.2d at 274. The Court found the fact that Ramey could not immediately possess the home did not affect the vested nature of her interest. *Id.* Nor was her interest "rendered contingent merely because it might be divested by the happening of a condition subsequent. The exercise of the power of disposal by either of the [grantors] would merely divest Frances [sic] Ramey of her vested estate." *Id.*

By comparison, this Court has found contingent remainders in cases where the devisees must reach a certain age before taking or where the devisees are either unnamed or not yet in existence. In *Fidelity & Columbia Trust Co. v. Tiffany,* this Court held the grandchildren of the testator received a contingent remainder because of the condition precedent that a grandchild could not receive any income until he reached the age of twenty-two. 260 S.W. at 359. In other words, no grandchild received any benefit from, nor had any vested interest in, the estate until he reached twenty-two years of age. *Id.*; *see also Curtis v. Citizens Bank & Trust Co. of Lexington,* 318 S.W.2d 33 (Ky.1958). In *Hurst v. Russell,* 77 S.W.2d at 355–56, the testator gave his daughter a tract of land for her life, then "to her lawful heirs and assigns forever." *Id.* At the time the suit was brought, the daughter had two sons. *Id.* The Court held they were contingent remaindermen because the word "heirs" designated a class of takers whose members could not be known until the death of their mother (the testator's daughter). *Id.* Thus, the grandchildren's interest was contingent because it could not vest until the mother died and all the members of the class could be determined. *Id.*

In the present case, Janet and Jillisa are to receive all the assets remaining in their father's estate after Rosa's life estate terminates. Should either of them predecease Rosa without issue, that daughter's share passes to her sister. Should either of them predecease Rosa with issue, the deceased daughter's share passes either according to her will or to her issue. None of the characteristics of a contingent remainder are present as to Janet and Jillisa's interests under their father's will. The estate is not to be withheld from Janet

---

**1.** A vested remainder subject to divestment is also referred to as a "defeasible remainder."

*Black's Law Dictionary* 1295 (7th ed.1999).

and Jillisa until they reach a certain age or achieve a certain status, nor is their remainder to be shared with an unspecified "heir" or with a class with undetermined members. The remainder was left specifically to "Janet P. Hammons" and "Jillisa S. Hammons," the born and ascertained daughters of the testator. The amount Janet and Jillisa, (or their children should either daughter predecease Rosa), receive depends on how much of the corpus of the estate Rosa consumes to provide for her own proper maintenance and medical care. These contingencies in the colloquial sense—that there be something left in the estate and that Janet and Jillisa either survive Rosa or leave a child—do not prevent Janet and Jillisa's interest from vesting immediately upon the death of the testator. They simply create the possibility that Janet and Jillisa may be divested of their interests. In accordance with the copious law on this subject, we hold Janet and Jillisa have a vested remainder subject to divestment.

Construing the will thus is also in keeping with the intention of Dr. Hammons, the testator. It is clear from the will as a whole that he intended to care for both his wife and his daughters, to the greatest extent possible. To that end, he provided for his wife during her life and left whatever remains of his estate "absolutely and in fee simple" to Janet and Jillisa. In the event his wife had predeceased him, he left all of his assets to his daughters. And had his wife been unable or unwilling to serve as executrix, he named his daughters as co-executrices. These provisions make clear Dr. Hammons trusted his daughters and wanted to ensure they would be cared for after his death. Finding he left his daughters a vested remainder is in keeping with this intent and, accordingly, we reverse the Court of Appeals on this issue.

## II. Rosa Hammons is Not Required to Provide Notice When She Invades the Corpus or an Accounting of How She Expends the Estate.

The fact that Janet and Jillisa possess a vested remainder does not alter the nature of Rosa Hammons' life estate or impose on her any duty to account for her use of the property or provide notice when she invades the corpus. A life estate is a freehold interest in property that continues during the life of the life tenant, who may be the property owner or some other person. *English v. Carter*, 300 Ky. 580, 189 S.W.2d 839, 840 (1945). The life tenant has the same interest in the property the remainderman will have in it after it comes into his possession, except the life tenant may not commit waste. *Id.*; *see also Adams v. Adams*, 371 S.W.2d 637, 638 (Ky.1963); *Smith v. Harris*, 276 Ky. 529, 124 S.W.2d 786, 788 (1939). In general, a life tenant owns the property during the life estate and is entitled to the full use and enjoyment of the property, including the income and profits, though she may not consume any part of the corpus. *Taylor v. Yeager*, 261 S.W.2d 638, 639 (Ky. 1953); *English*, 189 S.W.2d at 840 ("Free enjoyment is the very essence of a life estate."). Absent a showing of danger of loss or waste, life tenants are not required to give security for the protection of the remaindermen. *Crutcher v. Elliston's Ex'rs*, 299 Ky. 613, 186 S.W.2d 644, 646 (1945); *Buckman's Trustee v. Ohio Valley Trust Co.*, 288 Ky. 114, 155 S.W.2d 749, 750 (1941).

A life tenant has sometimes been referred to as a trustee, quasi-trustee, or fiduciary in relation to the remainderman, but only in the sense that, like trustees, life tenants have a duty not to injure or dispose of the corpus of the estate to the detriment of the remainderman. *Miracle v. Miracle*, 260 Ky. 624, 86 S.W.2d 536, 538

(1935); *Superior Oil Corp. v. Alcorn*, 242 Ky. 814, 47 S.W.2d 973, 987–88 (1931). However, unlike the trustee of a pure trust, a life tenant may use the property for her exclusive benefit, taking the income and profits. *Id.* This difference, we believe, makes it inappropriate to look to the accounting duties of trustees to find a similar duty on the part of a life tenant.

 Trustees are all the more inappropriate figures of comparison because the life tenant's duty to not encroach on the corpus of the estate is not absolute. The life tenant may consume the corpus if the testator explicitly or implicitly so provides. *Louisville Baptist Orphans' Home v. Igleheart's Adm'rs*, 223 Ky. 702, 4 S.W.2d 693, 693–94 (1928). If the language of the will only implicitly grants the life tenant the power to consume the corpus, the life tenant may not do so without permission from the court. *Kincaid v. Bell*, 205 Ky. 487, 266 S.W. 44, 45 (1924). In these cases, because the testator has not expressly authorized an invasion of the corpus, the life tenant's ability to invade the corpus is limited to what is necessary for her support and maintenance, as determined by a court. *Id.* Subjecting the life tenant to the court's advice and control protects the remainderman's interest in the estate. *See, e.g., Trustees Presbyterian Church, Somerset v. Mize*, 181 Ky. 567, 205 S.W. 674, 674–75 (1918) (ordering the life tenant, who had only an implicit right to invade the corpus for his comfortable maintenance, to report the property he received, including any disposition, receipts, and disbursements). However, if the testator explicitly grants the life tenant the power to consume the corpus, the life tenant need not petition the court and may invade the corpus at her discretion, albeit

in accordance with the provisions of the will. *Maynard v. Raines*, 240 Ky. 614, 42 S.W.2d 873, 873–74 (1931). In these cases, the court respects the testator's right to dispose of his estate in the manner he sees fit and the concomitant rights of beneficiaries to exercise the rights given them by the testator, provided all is within the bounds of the law. Thus, if a testator intentionally and clearly provides the life tenant may invade or even exhaust the corpus, the life tenant is free to do so at her discretion. Whether, in those circumstances, the life tenant must provide notice or an accounting of his use of the property is a matter of first impression for this Court. However, courts in other states have considered this issue and have held, seemingly uniformly,[2] that, absent evidence the life tenant is abusing her authority, no notice or accounting is required.

The Supreme Court of Iowa held that where a life tenant had the explicit right to encroach upon the corpus and the remainderman had a vested remainder subject to divestment, the remainderman is not entitled to an accounting of the life tenant's use of the property, absent a showing of waste, improvidence or fraud. *Nelson v. Horsford*, 201 Iowa 918, 208 N.W. 341, 341–43 (Iowa 1926). Similarly, the Kansas Supreme Court held that a life tenant who has the power to dispose of or consume the corpus is not required to "furnish an accounting for the protection of the remaindermen in the absence of a showing of danger of loss or waste." *Matter of Estate of Jud*, 238 Kan. 268, 710 P.2d 1241, 1248–49 (1985) (citing *In re Estate of Lehner*, 219 Kan. 100, 547 P.2d 365 (1976)). The Kansas Court reasoned, when such broad power is given to the life tenant by the will, it is inconsistent with the intent of the

---

**2.** No contrary case has been cited to the Court and our research has uncovered no contrary authority.

testator and overly burdensome on the life tenant to require an annual accounting. *Id.* The Tennessee Supreme Court ruled a remainderman does not have the right to inspect a life tenant's records to determine if she is exceeding her rights in the property. *Holley v. Marks*, 535 S.W.2d 861, 862 (Tenn.1976). The Court stated, "Even though a life tenant has been called a quasi trustee for the remaindermen ... he has no duty to account for his use of the property." *Id.*

In Illinois, a life tenant is not required to provide the remaindermen with an accounting of the life tenant's disposition or management of the estate. *Thomas v. First Nat. Bank of Chicago*, 134 Ill.App.3d 192, 89 Ill.Dec. 8, 479 N.E.2d 1014, 1029 (1985). In *Thomas*, the remaindermen argued they did not seek an accounting *per se*, but rather only as much information as necessary to ensure the life tenant properly exercised her power over the property. *Id.* at 1028. The court refused to adopt such a distinction and instead affirmed the well-settled law in Illinois, namely that absent an allegation of fraud, malfeasance, or other similar misconduct, a life tenant is not required to provide an accounting of his or her use of the property. *Id.*

We find the logic and conclusions of these courts consistent with our duty to give effect to the testator's intent and thus hold that when a life tenant is explicitly given the right to consume or invade the corpus of the estate, absent a showing of waste, she may do so at her discretion without need to petition the court for permission or provide notice of the invasion or an accounting of her use of the property. To require such a life tenant to provide notice or an accounting would be overly burdensome and would run counter to the trust the testator expressly reposed in the life tenant.

■ In this case, Dr. Hammons explicitly gave Rosa a life estate with the right to consume the corpus for her proper maintenance and medical care. Item One of the will provides, "If at any time during her lifetime the income from the property together with such other money and property which she may have is insufficient to provide for her proper maintenance and medical care, she shall be entitled to use so much of the corpus of this devise and bequest as shall be necessary to provide for such purposes." The testator does attach a stipulation that Rosa must have "exhausted all property which she has, including principal and income from her property and the income from the property left to her under this Item before she may invade the principal...." This stipulation does not alter the fact that the will gives Rosa the express right to consume the corpus when necessary, consistent with the above-referenced provision regarding exhausting her own property, and indicates she is a competent judge of that necessity. The provisions of the will clearly indicate the testator reposed complete confidence in Rosa. He entrusted her with the care and preservation of his entire estate and, in naming her as sole executrix, he dispensed with the furnishing of any security. Further, he conferred on her the power to sell any real estate on terms and conditions as "she may deem appropriate" and to invest the proceeds "in her absolute discretion." To require Rosa to periodically establish that her own personal financial circumstances justify an invasion of principal would be inconsistent with the testator's evident confidence in her good faith and judgment as well as with the law set forth above. For these reasons, we affirm the Court of Appeals on this issue.

■ Finally, we are compelled to note that our decision today does not leave Jan-

et and Jillisa without remedy or recourse. As a life tenant, Rosa has a duty not to injure the remaindermen in the exercise of her rights. *Adams,* 371 S.W.2d at 637–38. Thus, if Rosa is committing waste by improperly invading the corpus or misusing the estate, as she herself has noted in her brief to this Court, Janet and Jillisa may bring an action for waste.[3] *See e.g., Smith v. Harris,* 124 S.W.2d at 786. However, there is currently no allegation of waste.

## CONCLUSION

Janet and Jillisa Hammons possess a vested remainder subject to divestment. The conditions subsequent in the will may divest Janet and Jillisa of their interest in the estate, but their interests vested upon the death of their father. Rosa Hammons has a life estate with the right to consume the corpus if necessary for her proper maintenance and medical care. She need not petition the court for permission to do so, provide notice when she invades the corpus, or, absent litigation, provide an accounting of how she expends the property. As noted, however, a life tenant can be liable for damages if a remainderman can establish waste.

For the foregoing reasons, we affirm in part and reverse in part the opinion of the Court of Appeals.

All sitting. All concur.

---

3. KRS 381.350 provides remedies against a life tenant who commits waste: "If any tenant for life or years commits waste during his estate or term, of anything belonging to the tenement so held, without special written permission to do so, he shall be subject to an action of waste, shall lose the thing wasted, and pay treble the amount at which the waste is assessed."

KRS 381.360 authorizes remaindermen to maintain an action for waste and recover any appropriate damages: "The action for waste may be maintained by one who has the remainder or reversion in fee simple after an intervening estate for life or years, and also by one who has a remainder or reversion for life or years only, and each of them shall recover such damages as he has suffered by the waste complained of."