RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0954-MR


I.L., A MINOR, BY AND THROUGH HIS
NATURAL PARENTS AND NEXT FRIENDS,
CHRISTIE LAUGHLIN AND MATT LAUGHLIN       APPELLANT


                APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE MARY M. SHAW, JUDGE
                ACTION NO. 16-CI-000420


DONNA HARGANS, SUPERINTENDENT OF
JEFFERSON COUNTY PUBLIC SCHOOLS, IN
HER OFFICIAL CAPACITY AND INDIVIDUALLY;
SHERVITA WEST-JORDAN, PRINCIPAL OF
BRANDEIS ELEMENTARY SCHOOL, IN HER
OFFICIAL CAPACITY AND INDIVIDUALLY;
SHERRY MCKENZIE, IN HER OFFICIAL CAPACITY
AND INDIVIDUALLY; AND SAMUEL COWAN, IN
HIS OFFICIAL CAPACITY AND INDIVIDUALLY       APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

ACREE, JUDGE: I.L.'s parents brought this action on behalf of their child against his teacher and other school officials.[1] The Jefferson Circuit Court granted summary judgment motions in favor of all appellees to this appeal, and I.L. now seeks review. Finding no error, we affirm.

## BACKGROUND

At all relevant times, I.L. was a seven-year-old male, first-grade student in the Jefferson County Public School (JCPS) system, assigned to Sherry McKenzie's class. On March 11, 2015, while I.L. was taking a test in class, two female students, E.S. and T.E., fondled his penis and digitally penetrated his anus. I.L. did not call out for help or report the incident to McKenzie, who had recently discouraged her students from "tattling" on each other.[2] While home, I.L. began singing a song that included the word "butthole" and his mother chastised him for using the word. He then told her of the incident at school.

Later that evening, I.L.'s mother e-mailed McKenzie detailing the incident. McKenzie reported the e-mail to the assistant principal.[3] McKenzie

---

[1] Defendants below and appellees in this Court are: (1) Sherry McKenzie, I.L.'s teacher; (2) Donna Hargans, the Jefferson County Superintendent; (3) Shervita West-Jordan, the school's principal; and (4) Samuel Cowan, the former assistant principal.

[2] She testified in deposition that she had discussed with her class the difference between "tattling" about insignificant matters and "telling" adults about things that could cause or had caused harm.

[3] Samuel Cowan was not the assistant principal at the time of the incident, but he was when I.L. filed suit.

testified that while her students were taking the test, she monitored them by walking among the students, focusing their attention or aiding them as needed. She did not recall any disturbances and did not observe anything out of the ordinary. Ultimately, the school contacted both Child Protective Services and the Crimes Against Children Unit of the Louisville Metro Police Department. Both agencies determined the incident needed to be addressed by the school district and declined to investigate further. At the behest of the principal, JCPS conducted investigations to determine: (1) if I.L. was sexually assaulted; and (2) whether McKenzie adequately supervised the classroom.

After conducting interviews, the investigation concluded that McKenzie properly supervised the classroom. The investigation resulted in a two-day, in-school suspension for each of the female students.

I.L.'s mother deemed the investigation and punishment inadequate. She expected the students to be expelled or, at least, transferred from I.L.'s class. This prompted her to initiate this action against school officials. She asserted claims of negligence, negligent supervision, and negligent hiring, training, supervision, and retention against McKenzie, Cowan, West, and Hargans.[4] All four moved for summary judgment. Each claimed the defense of qualified official

---

[4] The notice of appeal misspells the superintendent's name "Hargans," but the name is spelled correctly elsewhere in the record as "Hargens." This Opinion adopts the spelling from the document that initiated this appeal.

immunity and that I.L.'s injuries were unforeseeable as a matter of law. The circuit court granted the motion as to Hargans, West, and Cowan because they were entitled to qualified immunity. The circuit court granted summary judgment to McKenzie because I.L. did not present sufficient evidence to create a genuine issue of material fact "whether the risk of injury was reasonably foreseeable." *Gonzalez v. Johnson*, 581 S.W.3d 529, 532 (Ky. 2019) (citation omitted). This appeal followed.

## STANDARD OF REVIEW

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting Kentucky Rules of Civil Procedure (CR) 56.03). "Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions." *Id.* (citing *Malone v. Ky. Farm Bureau Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky. 2009)).

# ANALYSIS

In Kentucky, when government officials are sued in their individual capacities, they may claim the defense of qualified immunity. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* (citations omitted). As a result, "[*w*]*hether* the employee's act is discretionary, and not ministerial, is the qualifier that must be determined before qualified immunity is granted to the governmental employee." *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014). "[P]roperly performing a ministerial act cannot be tortious, but negligently performing it, or negligently failing to perform it, can be." *Id.* (citing *Yanero*, 65 S.W.3d at 522). Alternatively, "[n]egligently performing, or negligently failing to perform, a discretionary act cannot give rise to tort liability, because our law gives qualified immunity to those who must take the risk of acting in a discretionary manner." *Id.* (citing *Yanero*, 65 S.W.3d at 521-22).

Therefore, liability analysis begins by determining whether an individual's actions were ministerial or discretionary. A duty is ministerial "when it is absolute, certain, and imperative, involving merely execution of a specific act

arising from fixed and designated facts[.]" *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky. 1959). A ministerial act is "one that requires only obedience to the orders of others" or is done "without regard to his or her own judgment or opinion concerning the propriety of the act to be performed." *Marson*, 438 S.W.3d at 297 (citations omitted). Alternatively, discretionary duties are those "calling for a good faith judgment call made in a legally uncertain environment" and include "the exercise of discretion and judgment, or personal deliberation, decision and judgment." *Id.* (internal quotation marks, brackets, and citations omitted). As explained in *Marson*, "[t]o some extent, this [differentiating between discretionary and ministerial acts,] says that governing cannot be a tort, but failing to properly carry out the government's commands when the acts are known and certain can be." *Id.* at 296. Additionally, such distinction between ministerial and discretionary "rests not on the status or title of the officer or employee, *but on the function performed*." *Yanero*, 65 S.W.3d at 521 (emphasis added) (citation omitted).

As I.L. noted, the duty to supervise students and the nature of that duty owed by school officials is set out in the school system's Policy 09.221 and in Kentucky Revised Statutes (KRS) 161.180. We focus first on I.L.'s claims against the superintendent, principal, and vice principal of negligent supervision of the students. Analysis of those defenses is best guided by *Ritchie v. Turner*, 559

-6-

S.W.3d 822 (Ky. 2018). In Section II of that Opinion entitled, "The School

Officials' Duty to Supervise Was a Discretionary Act[,]" our Supreme Court said,

in pertinent part:

> Kentucky school administrators are required by statute to "hold pupils to a strict account for their conduct on school premises, on the way to and from school, and on school sponsored trips and activities." KRS 161.180. [JCPS] Policy 09.221, titled "Supervision of Students," citing KRS 161.180, likewise provides that "[e]ach teacher and administrator shall hold pupils to a strict account for their conduct on the premises, on the way to and from school, and on school sponsored trips and activities." That policy also states that "[s]tudents will be under the supervision of a qualified adult. . . ."

> . . . Policy 09.221 . . . contained only general supervisory duties regarding students rather than specific ones and, consequently, the school officials were entitled to qualified immunity. In *Marson*, we addressed whether the principal was entitled to qualified immunity when a child fell off a set of bleachers which were not properly extended. Having observed that principals have a "duty to provide a safe school environment, but they are not insurers of children's safety[,]" we held that the principal was entitled to immunity because she "did not have the specific duty to extend the bleachers properly, nor did she choose to undertake that duty." 438 S.W.3d at 299.

> Like the general duty in *Marson* to provide a safe school environment, the duty in KRS 161.180(1) [and] Policy 09.221 . . . to provide student supervision "is a discretionary function for [school officials] exercised most often by establishing and implementing [supervision] policies and procedures," which is qualitatively different from actually supervising the students, a ministerial duty for those who are assigned such supervision. *Marson*, 438 S.W.3d at 299, 302. . . . [T]he school officials only had a

-7-

> general supervisory duty over [the student]. . . . *Marson* resolves the question ***in favor of the school officials as to whether they are entitled to qualified immunity as to [the students'] supervision, or the lack thereof*** . . . .

*Id.* at 831-32 (emphasis added).

We cannot distinguish *Ritchie* and must affirm the summary judgment as to claims of negligent supervision of the offending students by the superintendent, principal, and vice principal because they are entitled to qualified official immunity.

Regarding I.L.'s claims of negligent retention by those same school officials, the circuit court said: "[D]etermining whether to retain [McKenzie] absent commission of an infraction that mandates termination is inherently discretionary . . . ." (Record (R.) at 960.) This is consistent with case law – "school officials had a common law duty to use reasonable care in making their decision regarding disciplining, dismissing or retaining [the teacher]. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009). That decision is inherently a discretionary function . . . ." *Ritchie*, 559 S.W.3d at 842.

The circuit court went further in its analysis, however. Despite anecdotal and general disparagement of McKenzie, the circuit court effectively held that no reasonable juror could conclude on McKenzie's record (no discipline, no record of subpar performance, no corrective actions taken) that "McKinzie's [sic] performance as a teacher was so poor as to mandate her termination,

rendering it a ministerial act." (R. at 960.) That is, no school official with authority to terminate teachers was obliged by a ministerial duty to fire McKenzie, *i.e.*, to not retain her.

The school officials are entitled to qualified immunity as to I.L.'s claims of negligent retention.

As to the school officials other than McKenzie, that leaves I.L.'s claim for negligent supervision of McKenzie herself, as opposed to supervision of students. "[A]n employer may be held liable for the negligent supervision of its employees 'only if he or she knew or had reason to know of the risk that the employment created.'" *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. App. 2013). The applicable Restatement section elaborates, as follows:

> The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. See the Restatement of Torts, § 308.
>
> The dangerous quality in the agent may consist of his incompetence or unskillfulness . . . . with reference to the act to be performed. . . .
>
> One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent . . . or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in

-9-

selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. . . .

*Liability results* under the rule stated in this Section, not because of the relation of the parties, but *because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment*. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

RESTATEMENT (SECOND) OF AGENCY § 213 cmt. d (1958)[5] (emphasis added); *see*

*MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 (Ky. 2014) (following

RESTATEMENT (SECOND) OF AGENCY § 213).

---

[5] The text of this section of the Restatement reads as follows:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
(a) in giving improper or ambiguous orders of in failing to make proper regulations; or
(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:
(c) *in the supervision of the activity*; or
(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

RESTATEMENT (SECOND) OF AGENCY § 213 (emphasis added).

A material fact to be determined before principals[6] are held independently liable for failing to supervise an agent is what the officials knew or reasonably should have known. There is no evidence at all that these school officials knew or reasonably should have known that McKenzie's employment risked making one of her students the victim of sexual assault by a fellow student or students. Again, *Ritchie v. Turner* is illuminating.

In *Ritchie*, parents of a middle school student filed suit against a similar group of school officials alleging, *inter alia*, their independent liability for negligent supervision of a teacher who was having sexual relations with one of his students at school. 559 S.W.3d at 829-30. The Supreme Court held the school officials were entitled to qualified official immunity because "there was never any hint of sexual misconduct . . . ." *Id.* at 843 ("school officials in this case had no knowledge whatsoever of any abuse/sexual misconduct").

Little logic is necessary to apply *Ritchie* here, and we urge a thorough reading of that case.[7] If, in *Ritchie*, school officials charged with negligent supervision were entitled to qualified immunity despite some evidence of

---

[6] Obviously, the context here is the principal/agent relationship and not the head of the school.

[7] In *Ritchie*, there was some reason for suspicions by the school officials. The teacher in that case was known to have engaged in improper conduct in the form of excessive and personal texting with the student. *Ritchie*, 559 S.W.3d at 828 (the school superintendent "found the excessive messaging inappropriate").

-11-

inappropriate conduct by the teacher himself, how is it possible that qualified immunity would be unavailable to officials in defense of I.L.'s claim of negligent supervision where there was no evidence of inappropriate conduct by I.L.'s fellow students?[8] We conclude the school officials were entitled to qualified official immunity as a defense to the claims that they negligently supervised McKenzie.

This leaves only the liability of McKenzie herself. As already noted, supervision of students is "a ministerial duty for those who are assigned such supervision." *Id.* at 832. Still, negligent supervision of students is a tort claim of negligence like any other. To survive a summary judgment motion, I.L. needed to present sufficient evidence to create a genuine issue of material fact regarding each of the four elements of a negligence claim.

To survive the summary judgment motion, I.L. needed to present some evidence that (1) McKenzie owed I.L. a duty of care; (2) McKenzie breached that duty of care; (3) a causal connection existed between McKenzie's conduct and I.L.'s damages; and (4) damages occurred. *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016). The causal connection element is composed of two elements:

> Cause-in-fact and legal or consequential causation. Cause-in-fact involves the factual chain of events leading

---

[8] I.L. did not seek to sue the parents of E.S. or T.E., who might have known of any potential risk to other students posed by their children. If a parent knows of the need to prevent his child from intentionally harming others, the parent has a duty to do so. *Hugenberg v. West American Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174, 181 (Ky. App. 2006).

-12-

to the injury; whereas, consequential causation concerns the concepts of foreseeability and the public policy consideration on limiting the scope of responsibility for damages. In Kentucky, the cause-in-fact component has been redefined as a "substantial factor" element as expressed in Restatement (Second) of Torts § 431. The scope of duty also includes a foreseeability component involving whether the risk of injury was reasonably foreseeable.

*Gonzalez*, 581 S.W.3d at 532 (citation omitted). Seizing on the foreseeability analysis as a component of "legal or consequential causation," the circuit court carefully considered the record and noted that I.L. failed to present sufficient evidence to create a genuine issue regarding legal or consequential causation – *i.e.*, the foreseeability of E.S.'s and T.E's conduct that caused I.L.'s injury. The order granting summary judgment states as follows:

> Brandeis students are not generally unruly or out of control . . . . [I]t was not a concern among Brandeis administrators that first graders would touch one another in the manner alleged. Further, there was no evidence of previous misbehavior by E.S. or T.E. or any other student that led to suspicions they might touch another student similar to the manner alleged. E.S. and T.E. were regarded as good students by both Ms. McKinzie [sic] and Ms. Laughlin [I.L.'s mother], and I.L. testified that his interactions with E.S. and T.E. were minimal; they rarely, if ever, spoke even though he had been seated beside E.S. for much of the school year. There is no evidence that JCPS thought it necessary to train teachers to watch out for elementary students touching each other's genitalia or engaging in other sexualized behavior. . . . A reasonable teacher would not recognize undue risk of sexualized touching to students under the circumstances present at the time of the alleged touching.

-13-

(R. at 969-70.) McKenzie's general duty to supervise her students is not at issue. But to demonstrate that McKenzie's failure to satisfy that duty caused I.L.'s injury, I.L. was required to present enough evidence to create a genuine issue that "the risk of injury was reasonably foreseeable." *Gonzalez*, 581 S.W.3d at 532. This, I.L. did not do. For this reason, McKenzie was entitled to summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, the Jefferson Circuit Court's May 29, 2019 order is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

A. Nicholas Naiser
Louisville, Kentucky

BRIEF FOR APPELLEES:

Byron E. Leet
Jordan M. White
Louisville, Kentucky