RENDERED: MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1155-MR

CHARLES DURHAM,
INDIVIDUALLY, AND BY AND
THROUGH HIS EMERGENCY
GUARDIAN AND NEXT FRIEND,
TONYA GILLIAM                                                          APPELLANT

APPEAL FROM CLARK CIRCUIT COURT
v.      HONORABLE COLE ADAMS MAIER, JUDGE
ACTION NO. 21-CI-00003

DOMINO'S PIZZA, LLC; ALEXIS
LANTER; AND JW'S PIZZA, LLC                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND LAMBERT,
JUDGES.

LAMBERT, JUDGE:  Charles Durham appeals the Clark Circuit Court's order

granting summary judgment in favor of Domino's Pizza, LLC.  After careful

review of the briefs, record, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Domino's Pizza, LLC (Domino's) is a national pizza chain and JW's Pizza, LLC (JW's) is one of its franchisees. On January 3, 2020, a delivery driver employed by JW's struck Durham, a pedestrian, with her vehicle while making a delivery. The circumstances surrounding the collision are disputed.

On January 2, 2021, Durham, through his guardian, filed the underlying action against Domino's, JW's, and the delivery driver asserting claims of negligence; negligence per se; negligent entrustment, hiring, supervision, training, or retention; and gross negligence. Relevant to this appeal, Durham alleged that the delivery driver was an employee, borrowed servant, or dual agent of Domino's; that she was acting within the scope of her employment; and that Domino's controlled or had the right to control the daily operations pertaining to the delivery procedures, equipment, vehicles, and drivers of JW's. The corporate defendants maintained, however, that the delivery driver was solely employed by JW's, that JW's was an independent contractor, and that Domino's had no control over the daily operations of JW's. It is conceded that the delivery driver was acting within the scope of her employment at the time of the collision.

On June 10, 2022, Domino's moved for summary judgment on all claims against it, asserting that as a matter of law it was not vicariously liable for the actions of its franchisee or that franchisee's employee. Durham opposed the

motion and sought additional discovery pursuant to Kentucky Rule of Civil Procedure (CR) 30.02 and CR 56.06. On July 7, 2022, without explanation, the circuit court denied Durham's motions and granted summary judgment. After Durham's subsequent motion to alter, amend, or vacate or for additional findings was likewise denied, this appeal followed. We will introduce additional facts as they become relevant.

## ANALYSIS

As a preliminary matter, Durham argues that the court committed reversible error when, despite his diligent pursuit of evidence, the corporate defendants' obfuscation, and his proper CR 56.06 motion for additional time, he was denied an adequate opportunity to complete discovery. The Supreme Court of Kentucky "has cautioned trial courts not to take up [summary judgment] motions prematurely and to consider [such] motions 'only after the opposing party has been given ample opportunity to complete discovery.'" *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (quoting *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988)). We review a court's determination that the appellant has had sufficient time to complete discovery for an abuse of discretion. *Id.* A court abuses its discretion if its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal

principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

In evaluating the merits of his claim, Durham advocates that we apply the five factors test employed by the Sixth Circuit in *Doe v. City of Memphis*, 928 F.3d 481, 490-91 (6th Cir. 2019), for resolving motions for additional time under the analogous Federal Rule of Civil Procedure 56(d). The factors are: (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether this discovery would have changed the outcome; (3) the length of the discovery period; (4) whether the appellant was dilatory in his discovery efforts; and (5) whether the appellee was responsive to discovery requests. *Id.*

Durham asserts that these factors overwhelmingly favor a conclusion that the court abused its discretion. In support, Durham notes that the evidence confirming that, through its website and smartphone app, Domino's actively participated in the deliveries made by JW's was only obtained when the delivery driver was deposed after the motion for summary judgment was filed. He opines that further information pertaining thereto is critical to establishing the company's vicarious liability.

Durham asserts that, though he served and supplemented his discovery responses within a reasonable time, the responses of Domino's and JW's were six months late and unacceptably deficient in that the companies categorically

refused to provide necessary information on the basis of relevance. Similarly, the companies failed to provide any dates for their depositions when Durham broached the subject on March 30, 2022, and, after the motion for summary judgment was filed, they wholly refused to participate. Durham states that he diligently worked to resolve the discovery dispute without court intervention, and, when that proved unsuccessful, he properly and timely requested additional time to acquire specifically identified evidence.

In response, Domino's admits that it raised various objections to Durham's discovery requests and that it advised it was withholding proprietary documents until entry of an agreed protective order, but it disputes Durham's claim of diligence. Domino's states that, prior to the summary judgment motion, Durham made no attempt to agree to a protective order, he did not respond to a request that he place in writing any issues with its discovery objections, he did not provide proposed CR 30.02(6) notices or a list of topics as requested, and he did not seek to compel discovery. Additionally, Domino's maintains that the requested discovery was immaterial.

Ultimately, we conclude that the court did not abuse its discretion. Durham stresses that information concerning the Domino's website and app are necessary, a claim we can little evaluate, but admits that his July 13, 2021 discovery requests were tailored to obtain it, and thus, any inference that he only

became aware of the need for this information after deposing the driver is misleading. And though we cannot say that the corporate defendants acted promptly to comply with Durham's discovery requests, his responses were likewise dilatory, being three months and ten months late, respectively. We find it compelling that six months elapsed from the filing of the complaint to Durham propounding his first set of discovery requests on any party and his failure to take any action in the four months following his receipt of the unsatisfactory responses from Domino's. While Durham explains he was working to resolve these issues outside of court, the proof of his efforts amounts to two emails sent three months before the motion for summary judgment was filed. Accordingly, we find no abuse of discretion.

Next, regarding the merits of summary judgment, Durham contends that the court ignored material issues of fact and misapplied the law pertaining to vicarious liability.

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without

-6-

deference to either the trial court's assessment of the record or its legal conclusions.

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (internal quotation marks omitted).

Vicarious liability, also called the doctrine of *respondeat superior*, imputes responsibility for the tortious acts of a servant to its master. *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005). In their respective briefs, the parties cite and apply various tests to determine whether Domino's was vicariously liable, including: the franchisor liability test announced in *Papa John's International, Inc. v. McCoy*, 244 S.W.3d 44, 55 (Ky. 2008), the traditional agency analysis set forth in the Restatement of Law, *Agency*, Section 220(2) (1933), and *Sam Horne Motor & Implement Company, Inc. v. Gregg*, 279 S.W.2d 755, 756-57 (Ky. 1955), and the economic realities test espoused in *Mouanda v. Jani-King International*, 653 S.W.3d 65 (Ky. 2022) (though Durham concedes the latter was rendered after summary judgment in this matter).

*Papa John's*, which arose from a tort action, is directly on point binding authority wherein, having concluded that "the traditional rules pertaining to scope of employment and ostensible agency are inapposite to the issue of a franchisor's vicarious liability[,]" the court adopted the franchisor liability test. 244 S.W.3d at 55. As *Papa John's* has not been overruled, we reject Durham's contention that *Mouanda* and its economic realities test, which has been applied

only in the context of wage disputes and worker's compensation claims, supplanted its holding. Accordingly, the franchisor liability test exclusively controls the issue of whether Domino's is vicariously liable, and we confine our analysis to parties' arguments pertaining thereto.

In *Papa John's*, the Supreme Court of Kentucky held "that a franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." 244 S.W.3d at 55 (quoting *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis.2d 106, 682 N.W.2d 328, 338 (2004)). Though the facts in *Papa John's* did not require an in-depth application of the newly announced test, the Court expressly stated that the requisite control must be established by more than the "standardized provisions commonly included in franchise agreements [specifying] a right of inspection and such aspects as marketing, operational requirements, and uniform quality[.]" *Id.* Since *Papa John's*, the issue of franchisor liability has not been addressed by our courts in published caselaw.

Durham argues franchisor liability is proper since Domino's had both actual and a retained right of control over deliveries made by JW's. As evidence of the former, Durham states that the delivery driver identified Domino's as her employer to the first responders at the scene of the accident and again multiple

times during her deposition. The driver further testified that she was required to use a Domino's app, accessed via a supplied smartphone, which assigned deliveries to her, mapped out their routes using GPS, and provided visual and audio directions enroute, and that she was using this app during the delivery at issue. Durham asserts this is the equivalent of having a digital Domino's representative directing the driver's actions and creates a genuine issue of fact relating to this technology and the ultimate responsibility of Domino's for his injuries. And, lastly, the Domino's driver safety recommendations were published in the store via two posters.

Additionally, Durham asserts that various provisions of the Franchise Agreement evince that Domino's retained a right of control over the franchisee's day-to-day delivery operations. For example, Domino's unilaterally set the delivery boundaries for JW's and mandated annual review of any decision by the franchisee to limit deliveries; JW's was required to adhere to the methods, procedures, and standards of Domino's, including any post-agreement amendments, for delivering orders and for delivery safety; Domino's could make unannounced reviews to assess compliance; Domino's at its discretion could terminate the franchise agreement if JW's violated its terms, failed to comply with the prescribed standards of Domino's, or was deemed by Domino's to be an imminent danger to public health and safety. Through its operating standards,

Domino's imposed upon JW's minimum requirements for the hiring and training of delivery drivers (such as age, driving and criminal histories, and insurance coverage), for the appearance and maintenance of delivery vehicles, and for general delivery procedure (from restricting the amount of cash a driver may have on their person to a general mandate that drivers must follow all traffic laws). Durham notes that these exact contract provisions were held sufficient to establish the right to control in *Domino's Pizza, LLC v. Wiederhold*, 248 So.3d 212 (Fla. App. 2018), *aff'd* 306 So.3d 384 (Fla. App. 2020). Based on the above, Durham contends that the circuit court erred in granting summary judgment and that judgment must be reversed.

In response, Domino's maintains that the allegation that it provided the driver with a phone and that an app thereon controlled and directed her work is not supported by the evidence. Domino's cites the franchisee's sworn affidavit that all equipment and instrumentalities for operating the franchise were supplied by JW's. And, though Domino's concedes the app provides delivery location information, the driver testified at her deposition that, knowing her way around the area, she did not use those directions and that she could not hear the voice commands when the accident occurred. The driver also denied receiving any training regarding the Domino's driver safety posters. Finally, Domino's asserts that the driver's statements identifying it as her employer resulted from Durham's

leading questions. And, regardless, the driver's use of the trade name does not demonstrate control when she clarified that she had been hired, trained, supervised, and paid by JW's, and all three defendants denied she was employed by Domino's.

Domino's acknowledges that it imposes minimum standards and conducts compliance reviews on its franchisees to protect the integrity, public perception, and reputation of its brand, but it nevertheless asserts that by contract and practice it retained no day-to-day control over the driving operations of JW's. Contractually, the Franchise Agreement specifically provides that Domino's has no "responsibility or duty to operate [J.W.'s] and [that Domino's does] not have the legal right to direct [the employees of J.W.'s.]" Accordingly, Domino's maintains that JW's alone recruited, hired, trained, and supervised its staff – including the delivery driver. Domino's denies encroaching on that authority and expressly denies prescribing particularized driving standards or the routes that delivery drivers were required to take.

Finally, Domino's argues that Durham's reliance on *Wiederhold* is misplaced since Florida uses traditional agency principles and that case was factually distinguishable when, unlike the case at bar, the franchisee testified that Domino's controlled every aspect of its day-to-day operations. Instead, Domino's urges that the analysis in *Johnson v. Seagle Pizza, Inc.*, No. 2015-CA-000085-MR, 2016 WL 4410705 (Ky. App. Aug. 19, 2016) (unpublished) and *Viado v. Domino's*

-11-

*Pizza, LLC*, 217 P.3d 199 (Or. App. 2009), is instructive and supports summary judgment. We agree.

In *Johnson*, an armed perpetrator entered a Domino's franchise through an unsecured rear door, and, after robbing the store, he fled to the parking lot where he encountered and killed Mr. Johnson. 2016 WL 4410705, at *1. Johnson's estate and his son sued, arguing that Domino's was "negligent regarding the instrumentalities over which [it] retained the right of control, which [were]: (1) Domino's security procedures and equipment relating to the back door, (2) Domino's procedures relating to the handling of cash, and (3) Domino's choice of very late operating hours for the store." *Id.* at *3. Domino's sought and obtained summary judgment. *Id.*

On appeal, a panel of this Court acknowledged that Domino's had directed in its operational manual that the rear door must be kept closed and locked and that the store must remain open until at least midnight, but the Court nevertheless concluded that summary judgment was proper. *Id.* at *3-4. The Court explained that, though these contract provisions facially support vicarious liability, in reality they were merely minimum operational guidelines intended to create a ubiquitous experience worldwide and not evidence of day-to-day control in their implementation. *Id.* at *4.

In *Viado*, like the case at bar, the issue was whether Domino's was vicariously liable for a vehicular accident that occurred during a delivery, and the plaintiff relied on the various standards for deliveries set out in the operational manual (consistent with the directives identified above) to establish control. 217 P.3d at 199. Rejecting liability, the Oregon Appellate Court stated that, "[s]etting those standards for a franchisee's employees and having the right to actually control how the franchisee's employees perform the physical details of driving are two different things." 217 P.3d at 211.

A review of these cases makes it plain that vicarious liability requires a franchisor to directly supervise the daily activities of the franchisee, or at least have the right to do so. This is consistent with *Kerl*, the case from which *Papa John's* adopted the franchisor liability test. The *Kerl* Court explained that the accepted justifications for vicarious liability, spreading risk and incentivizing increased due care to a party better suited to its charge, were weak in the context of franchises because the franchisor's control is limited to contractual quality and operational requirements and "does not consist of routine, daily supervision[,] and management of the franchisee's business[.]" 273 Wis.2d at 123, 126.

We have no difficulty concluding that the cited contractual provisions, compliance reviews conducted by Domino's, the driving safety posters, and the driver's statements naming Domino's as her employer are insufficient evidence of

the requisite control over the daily delivery operations of JW's. Durham's claim regarding the app is novel and less clear cut; however, applying the principles discussed above, we conclude it likewise fails.

Accepting Durham's factual assertions as true, Domino's requires that drivers use its branded app which, after a driver selects a delivery assignment, provides turn-by-turn directions, shows a satellite view of the delivery address, and affords the customer the ability to track the delivery. While this may constitute a routine involvement in the delivery process, we reject the argument that this is the equivalent of supervisory control and management over JW's. Again, as supported by the accepted justification for vicarious liability, supervision denotes a capability and responsibility for ensuring work is done correctly and safely. The mere requirement that franchisee employees use a tool that mechanically aids deliveries does not meet this standard, and, thus, extending liability under such circumstances does not serve the purpose of the doctrine. As we have concluded Durham failed to establish that Domino's was vicariously liable, by necessity it cannot be liable for gross negligence.

**CONCLUSION**

Therefore, and for the foregoing reasons, the summary judgment of the Clark Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Mickey T. Webster
Thomas E. Travis
Lexington, Kentucky


J. Tyler Ward II
Whitesburg, Kentucky

BRIEF FOR APPELLEE DOMINO'S
PIZZA, LLC:

Joseph P. Hummel
Erin Farnham
Louisville, Kentucky